(No. 49371.—

DONALD J. LANSING, Indiv. and as Ex'r, *et al.*, Appellees, v. THE COUNTY OF McLEAN *et al.*, Appellants.

*Opinion filed January 27, 1978.*

Randall B. Ehlers and Charles C. Compton, of Bane, Allison & Saint, P.C., of Bloomington, for appellants.

James Walker, Ltd., of Bloomington, for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Donald J. Lansing, individually and as executor of the estate of Helen Lansing, and Charles Lansing, brought an action against the County of McLean for the wrongful death of Helen Lansing, the wife of Donald and the mother of Charles, and to recover damages for personal injuries to Charles Lansing. The complaint also named as a defendant the McLean County superintendent of highways, who was alleged to be and was sued as a governmental entity. No person holding that office was named as a party.

The amended complaint alleged that at 4:30 p.m. on December 14, 1972, Mrs. Lansing was a passenger in an automobile driven by her son. The car was proceeding in an easterly direction on a highway in Tazewell County, which is immediately to the west of McLean County. A snowfall had occurred on December 11 and 12. It was alleged that while the highway in Tazewell County was free of snow and ice, upon entering McLean County the vehicle encountered a sheet of ice some one inch thick, which had accumulated by precipitation. The vehicle swerved out of control and crashed into a culvert, killing Mrs. Lansing and injuring her son.

The complaint alleged negligence on the part of the defendants in failing to remove the ice and slush which had accumulated on December 11 and 12, either as it fell or within a reasonable time thereafter; in failing to cover the highway with sand or other abrasive material; and in failing to warn approaching motorists of the icy condition of the highway. The trial court dismissed the complaint, the appellate court reversed and remanded (45 Ill. App. 3d 91), and we allowed the defendants' petition for leave to appeal.

The basis of the appellate court's reversal was that while the defendants had no duty to remove or neutralize snow or ice accumulating from natural conditions, they did have a duty to warn motorists of the existence of the snow and ice, assuming that these created a dangerous condition not reasonably apparent to the plaintiffs, and assuming also that the defendants were shown to have had actual or constructive notice of the condition in sufficient time to give such a warning. In addition to the defendants' appeal, the plaintiffs have cross-appealed from that part of the appellate court's opinion which held that there was no duty imposed upon the defendants with respect to the charges of negligence other than that of failing to give warning.

We affirm the decision of the appellate court so far as it holds that the defendants had no duty to remove the snow and ice. We reverse that decision insofar as it holds that the complaint stated a cause of action against the defendants for failure to provide warning of the icy condition of the highway.

So far as the county is concerned, it is a local public entity as defined in section 1—206 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—206). There is no question but that the county was the governmental entity responsible for the maintenance of that portion of the

highway where the accident took place. Section 3—105 of that act (Ill. Rev. Stat. 1975, ch. 85, par. 3—105) provides, however:

> "Neither a local public entity nor a public employee is liable for an injury caused by the effect on the use of streets, highways, alleys, sidewalks or other public ways, or places of weather conditions as such. For the purpose of this section, the effect on the use of streets, highways, alleys, sidewalks or other public ways of weather conditions includes the effect of wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets, highways, alleys, sidewalks, or other public ways and place resulting from weather conditions."

The complaint alleged, however, that on the date of the accident there was in effect a policy of public liability insurance protecting the county against the claims asserted by the plaintiffs. Section 9—103 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 9—103) provides:

> "(a) A local public entity may contract for insurance against any loss or liability which may be imposed upon it under this Act. Such insurance shall be carried with a company authorized by the Department of Insurance to write such coverage in Illinois. The expenditure of funds of the local public entity to purchase such insurance is proper for any local public entity.
>
> (b) Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit *by reason of the defenses and immunities provided in this Act.*" (Emphasis added.)

The appellate court held that by securing insurance the county had waived any immunity from liability by virtue of section 9—103.

This court has held that if a public entity is insured then section 9—103(b) effects a waiver of an immunity

from liability for negligence which would otherwise be conferred by a provision of the Act. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274.) We have also held that section 9—103(b) precludes an insured public entity from making the defense that a plaintiff has failed to give timely notice of its claim as required by section 8—102, or has failed to bring suit within the special one-year limitation period which was formerly imposed by section 8—101 (Ill. Rev. Stat. 1971, ch. 85, par. 8—101). See *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357; *Fanio v. John W. Breslin Co.* (1972), 51 Ill. 2d 366.

On the other hand, if immunity is not conferred by the Act, and there was a defense which existed prior to the Act, the procuring of insurance does not preclude a public entity from raising the defense that it is not liable. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165.) This latter rule results from section 2—111 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 2—111), which states:

> "Nothing contained herein shall operate to deprive any public entity of any defense heretofore existing and not described herein."

Despite its holding that the defendants had waived any immunity conferred by the Act, the appellate court held that they were nevertheless not liable for damages attributable to their failing to remove snow and ice by virtue of our decisions in *Graham v. City of Chicago* (1931), 346 Ill. 638, and *Strappelli v. City of Chicago* (1939), 371 Ill. 72. We agree.

In *Graham* the plaintiff slipped on a sidewalk which had become icy because the defendant, in flooding an abutting playground with water in order to create a skating rink, had negligently permitted water to overflow onto the sidewalk, where it had become frozen some 13 days prior to the accident. Since the ice had been created by artificial rather than natural causes a judgment for the plaintiff was

affirmed. But the court, after reviewing cases from other jurisdictions, summarized the general rule as follows (346 Ill. 638, 641-43):

"[T]here is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. [Citations.] A municipality is bound only to use reasonable care to keep its sidewalks reasonably safe for the amount and kind of travel which may fairly be expected upon them. [Citation.] In view of the generality of ice and snow in the winter time, the doctrine has become quite prevalent that it would be an unreasonable requirement to compel a municipality to remove them from walks and streets. \*\*\*

\* \* \*

\*\*\* the reason [for the rule] is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude."

In *Strappelli* the plaintiff was standing on a safety island which was covered with ice and snow to a depth of from one to four inches as the result of a heavy snow storm which had started some two days earlier. He slipped and fell while attempting to board a streetcar. We held that the city was not liable for the plaintiff's injuries.

The principle of nonliability announced in *Graham* and *Strappelli* has been adhered to in later cases. (See, *e.g., Riccitelli v. Sternfeld* (1953), 1 Ill. 2d 133; *McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d 459, 469.) It is not a doctrine unique to Illinois. See Prosser, Torts sec. 57, at 354-55 (4th ed. 1971); Annot., *Municipal liability for*

*injuries from snow and ice on sidewalk,* 39 A.L.R.2d 782 (1955).

Although the defense approved in *Strappelli* is one which is "described" in the Act, it is also a defense "heretofore existing," and we agree with the appellate court that it remained available under section 2—111. The inclusion of the phrase "described herein" in section 2—111 is, in our view, designed to confine the insurance waiver doctrine to those immunities conferred on local governmental entities by the Act itself. *Cf. Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 173; *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 362-63.

The rule announced in *Graham* and *Strappelli* did not indeed rest on a doctrine of governmental immunity, but rather upon the absence of liability in circumstances where the defendant had taken no action contributing to the injury. When these cases were decided, the abolition of immunity effected by *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, and its progeny had, of course, not yet taken place. Yet municipalities at that time were nevertheless liable for negligence causing injury in maintaining streets and sidewalks, since such maintenance was regarded as a "proprietary" activity lying outside the protected sphere of "governmental" activity. *Town of Waltham v. Kemper* (1870), 55 Ill. 346; *Sherwin v. City of Aurora* (1913), 257 Ill. 458; *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248.

The nature of the legal position occupied by a local public entity is also shown by the fact that private individuals are free from a duty to remove the natural accumulation of snow and ice on their own property. See *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065; *Foster v. George J. Cyrus & Co.* (1971), 2 Ill. App. 3d 274; *Anderson v. Davis Development Corp.* (1968), 99 Ill. App. 2d 55; Annot., *Liability For Injuries From Ice Or*

*Snow On Residential Premises,* 54 A.L.R.3d 558 (1973); Prosser, Torts sec. 131, at 982 (4th ed. 1971).

The significance of the similarity in the position of a government entity and a private individual is underscored by section 2—110 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 2—110), which provides:

> "Any liability of a local public entity established by this Act is subject to any defense that would be available to the local public entity if it were a private person."

Section 3—105 thus codified the preexisting judicially created rule of nonliability and extended it to counties which, prior to *Molitor,* had enjoyed a governmental immunity from suits for damages arising out of negligence in the maintenance of highways. (See *Hedges v. County of Madison* (1844), 6 Ill. (1 Gilm.) 567; *Town of Waltham v. Kemper* (1870), 55 Ill. 346.) Today, under this court's decisions in *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, 67, and *Hutchings v. Kraject* (1966), 34 Ill. 2d 379, 382, it would be invalid to treat cities and counties differently with respect to claims arising out of the exercise of the same function.

The plaintiffs suggest in passing that *Graham* and *Strappelli* are not controlling because they deal with sidewalks rather than streets. There is nothing in those cases or in any others of which we are aware to support that distinction. On the contrary, we noted in *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 252, "The sidewalk is simply a part of the street which the municipal authorities have set apart for the use of pedestrians."

We disagree with the holding of the appellate court that the defendants had a duty to give warning to motorists of the condition of the highway. To begin with, the complaint fails to allege facts showing that the defendants had either actual or constructive notice of the snowstorm of December 11 and 12, or of the icy condition of the highway resulting from it, in sufficient time to

provide an effective warning. Such notice is the necessary predicate of any duty on the part of the defendants both under section 3—102 of the Act (Ill. Rev. Stat. 1975, ch. 85, par. 3—102) and by the principles of the common law. *(Boender v. City of Harvey* (1911), 251 Ill. 228.) We find nothing in the complaint from which notice may be inferred, and the brief period of time elapsing between the date of the snowstorm and the accident raises no presumption of notice. *Cf. Strappelli v. City of Chicago* (1939), 371 Ill. 72.

Apart from the question of notice, we are of the opinion that no duty was imposed upon the defendants to warn users of the highway of conditions resulting from the natural accumulation of snow and ice. As the plaintiffs admitted in oral argument, a decision in their favor would require the defendants to post warning signs under comparable weather circumstances on every highway subject to their jurisdiction. A similar duty would arise for townships, forest preserve districts, park districts, and any other type of local public entity included under section 1—206 of the Act. The impracticability and the expense of posting warning signs, and the demands on available manpower would be comparable to those to which the court referred in the *Graham* decision.

Section 3—102 of the Act mandates that constructive notice of a defect in the highway itself does not exist if the condition "would not have been discovered by an inspection system that was reasonably adequate considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger." (Ill. Rev. Stat. 1975, ch. 85, par. 3—102(b)(1).) Similar considerations underlie the nonliability for damages caused by weather conditions which had been established by the *Graham* and *Strappelli* decisions and which was codified by section 3—105 of the Act. In the case of public highways we agree with the defendants' position that if

they had no duty to remove snow and ice, they had no duty to warn users of the highway that they had not done so. As was stated in *Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 921, "The duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given." See also *Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 15.

The plaintiffs predicate the asserted duty to provide warning on section 3—104 of the Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 3—104) and on section 11—304 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—304).

With respect to the former, section 3—104 provides:

"(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.

(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care."

In view of the fact that section 3—105 of the Act deals specifically with weather conditions we doubt that section 3—104 is applicable. The enumeration contained in subsection 3—104(a) indicates that signs of the type referred to by the plaintiffs are not included.

Section 11—304 of the Illinois Vehicle Code provides:

"Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are

required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways."

The plaintiffs refer us to two provisions in the Illinois Manual on Uniform Traffic Control Devices for Streets and Highways said to mandate the posting of a warning sign in this case. One is section 2—3.1, which applies to warning signs in general. The other is section 2—3.30, which relates to an "Ice On Pavement" sign. It provides:

"The Ice On Pavement sign (W8-7) may be placed temporarily in advance of a section of pavement on which ice has formed. This sign is not intended to be used as a warning of general icy conditions on pavement but should be reserved for use at a specific section where ice has formed and adjoining pavement is clear. It should not be permanently mounted and should be removed as soon as the condition has abated."

Although the plaintiffs have not called our attention to any decisions on the point, it is implicit in their position that they claim that a failure to comply with the cited provisions of the State manual creates tort liability on the part of the defendants. It is clear, though, from the language of section 2—3.30, that an "Ice On Pavement" sign was "not intended to be used as a warning of general icy conditions on pavement." The complaint made the general allegation that the highway in McLean County was covered with ice. The duty to warn that the plaintiffs claim was imposed on the defendants could not arise from section 2—3.30.

The judgment of the appellate court is therefore affirmed with respect to the holding that the defendants had no duty to remove snow and ice, and it is reversed

with respect to the holding that the defendants had a duty to warn the plaintiffs of the condition of the highway. The judgment of the circuit court of McLean County is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*