JOANNE KITTOE, a Minor, *et al.*, Plaintiff-Appellee, *v.* THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellant.

First District (1st Division)    No. 78-1293

Opinion filed March 26, 1979.

Allen S. Lavin, of The Metropolitan Sanitary District of Greater Chicago, of Chicago (Vincent P. Flood and Charles W. Boyd, of counsel), for appellant.

James E. Land, of James E. Land, Ltd., of Calumet City, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This is an appeal from a jury verdict and judgment for $80,000 for

Joanne Kittoe (plaintiff), and against the Metropolitan Sanitary District of Greater Chicago (defendant). Plaintiff's claim was for personal injuries arising out of a one-car accident. An automobile driven by plaintiff skidded on a patch of ice and collided with a utility pole on 138th Street in the Village of Riverdale.

Defendant contends that the trial court erred in denying its motion for directed verdict at the close of all the evidence and in denying its post-trial motion for judgment notwithstanding the verdict, or in the alternative for a new trial. Defendant further contends that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff testified that on January 1, 1973, she was operating an automobile westbound on 138th Street in Riverdale, Illinois, accompanied by Ronald Boerema (her husband now) and Jeff Yudiek, the owner of the automobile. She was not licensed to drive, but did have a learner's permit. She had been driving for approximately one year. It was night. The road was an unlighted, two-lane street which stretched from Halsted to Ashland uninterrupted by intersections. The weather was cold. Plaintiff had operated the vehicle for some time prior to entering 138th Street at Halsted. Plaintiff testified that the speed limit on 138th Street was 45 or 50 miles per hour. She was driving at approximately 40 or 45 miles per hour with lights on low beam when she came upon a section of ice covering the road. Her car went out of control and collided with a utility pole. As a result plaintiff suffered severe injuries. Plaintiff testified that, as a passenger in another vehicle, she had traveled this same road the preceding night. No ice was encountered on that trip.

On cross-examination plaintiff testified that although this night was the first time she had driven this car, it was substantially similar to the one she was accustomed to driving. She further stated that the accident occurred in front of the driveway of an industrial property operated by Fritz Enterprises, Inc. (Fritz), approximately halfway between Halsted and Ashland.

Officer Ronald Bonneau of the Riverdale Police Department testified that on or about January 1, 1973, he noticed a patch of ice approximately at the entrance to Fritz's. This was about halfway between Halsted and Ashland. At that time there existed a clay hole, covered by water, on the north side of 138th Street east of Fritz's. He had previously noted water coming from the clay hole property and going onto the street. He reported that the road was very dangerous in the vicinity of Fritz's property because it was covered from side-to-side with solid ice. In fact, his squad car slid off 138th Street within a week of January 1, 1973, due to the icy conditions. Bonneau stated further that there was also ice about 500 feet east of Ashland. There were times during the winter of 1972-1973

when the road was blocked off because of ice. He had been aware of complaints by surrounding landowners of water coming out of defendant's property.

Richard Kittoe, father of the plaintiff, testified that at 2 a.m. on January 2, 1973, he went to 138th Street. There was no vehicle there, but he did notice that an extensive section of road, 3 or 4 blocks of concrete, was covered with ice from Fritz's property west toward Ashland. Kittoe further testified that he returned to the scene on January 2, 1973, at 1:30 p.m. Ice and water remained on the road. The water was coming out of a ditch on the north side of 138th Street. It really was not a ditch, but a slight indentation. He put little pieces of paper in the water and saw that the current flowed out of the west gate on defendant's property toward Ashland. He described the flow as similar to a little river, 1 to 1½ feet wide. Kittoe further testified that he did not see any water coming out of Fritz's property.

On cross-examination, Kittoe testified that he saw the ice and thought the accident occurred about 500 to 600 feet from Ashland Avenue. He later corrected himself and stated that the ice and location of the accident were closer to 2000 feet from Ashland.

Ronald Boerema, now plaintiff's husband, testified that as he, plaintiff and Jeff Yudiek were driving on 138th Street, the car hit a patch of ice about three car lengths long. The car slid south, left the road surface, and came to rest against a telephone pole. The patch of ice was located near Fritz's building. He further testified that there is a lake located on the north side of 138th Street. A little bit further west towards Ashland is Fritz's and then a junkyard is located on the corner of Ashland and 138th Street. Boerema stated that he went back to the scene after the accident and saw water flowing from the clay hole on defendant's property, but he did not examine the location closely. On cross-examination, Boerema stated that the weather was cold and clear. It had not rained December 31, 1972, or January 1, 1973.

William McNeil, an employee of Fritz's, testified that he was familiar with the defendant's property during the time defendant was carrying on the sludge operations. He stated that there was always water on defendant's property, but it was 40 feet down in the clay hole before defendant started putting in the dredgings. When the clay hole had been filled in, the water came up to street level. Mr. McNeil stated further that he had seen water flowing west out of defendant's property to the street, but had never seen water flowing out of Fritz's property. He stated that defendant had a fence in front of its property which was caving in from erosion by water. At one time defendant brought four or five truckloads of stone and dumped them over the fence in order to restore it. Mr.

McNeil further stated that defendant's property is 50 feet from the driveway of Fritz's property. The water came out of defendant's place about 75 feet from that driveway. There was a storm sewer in the ditch on the north side of 138th Street, but it was not operating at the time defendant put sludge on their property. Mr. McNeil stated that "they got it operating after we had all the water on the street."

Donald Krause, Superintendent of Public Works for the Village of Riverdale, testified that during the winter of 1972-1973, the village had complaints regarding water on 138th Street between Ashland and Halsted. He was specifically sent to the area to determine the source of the water. He ascertained that the water main was not leaking. Then he followed the water to find its source. It flowed out of the defendant's clay hole and traveled under the fence on the west end of the property. The water collected on 138th Street just east of Fritz's driveway. There was a 50- to 60-foot area where the water buildup completely covered the street. At that time, he was not aware of any sewer system there. The village had no sewer system there according to their plans. Mr. Krause further testified that the fence surrounding defendant's property on 138th Street was collapsing from erosion since the water was right up to the fence.

Testifying for the defendant, Leon Turner, employee of the Chicago District Army Engineers, stated that he is a construction representative. His duties entail inspection of construction sites to ensure good quality. He was involved with the dredging spoil disposal site on defendant's property. He started there in 1969, and would inspect the area daily. The Cal-Sag Canal was being dredged about a half-mile from the disposal site. The last of the disposable material was pumped through defendant's property in October of 1972. At the final inspection, the clay hole had water in it about a foot and a half below the surface of the ground. Mr. Turner stated further that he still works in the area and passes through upon occasion. To his knowledge, there was never a situation when water from the clay hole overflowed onto 138th Street. Also, there had been no repairs to the fence surrounding defendant's property, other than those necessitated by traffic damage.

Edward Brosius, defendant's security guard, testified that he patrolled the defendant's property on 138th Street. He never received any complaints in December 1972 or January 1973 concerning that street. He further testified that during that period he never observed water flowing onto the street from defendant's property. He stated that he had seen ice on the street but not when other areas were clean.

David Nelligan, defendant's security guard, testified that at one time there were barricades blocking 138th Street when the State or county were doing work on the road. He never observed water coming from the

defendant's property onto the street. He would patrol the area about once a week.

David Shilling, a Riverdale patrolman, testified that he investigated an accident on January 1, 1973, on 138th Street between Ashland and Halsted. There were three people in the car: plaintiff, Ronald Boerema and Jeff Yudiek. The car involved was located approximately two-tenths of a mile east of Ashland. After calling an ambulance, he called a tow truck to remove the car. The road was covered with ice.

Joseph J. Kostur, Jr., employee of the State of Illinois Department of Transportation, testified that the State had full responsibility for the safety of 138th Street between Ashland and Halsted. They did not receive any complaints concerning defendant's property and 138th Street in 1972-1973. Mr. Kostur further stated that construction plans for that street indicated both surface and subsurface drainage structures.

Roy A. Carlson, supervising engineer of flood control for defendant, testified that in his opinion, as an expert witness and within a reasonable degree of engineering certainty, the channeling system, if properly maintained, was adequate to drain the highway, notwithstanding the presence of a body of water on defendant's property. He further testified that one week previously he had seen some indications of debris clogging some of the drainage facilities. On cross-examination, Carlson testified that he had nothing to do with this area in 1972-1973. He was at the scene a couple of weeks before testifying. He had no knowledge whether the sewer system was operative or not on January 1, 1973.

Stanley Whitebloom, defendant's chief pollution control officer, testified that he is responsible for enforcement of the defendant's ordinances as they pertain to the pollution of water and sewers within defendant's jurisdiction. From 1971 through 1973, he was familiar with 138th Street, particularly the area in front of Fritz's property. The defendant had a citation pending against Fritz Enterprises for pollution of waters and sewers. He had observed drainage from Fritz's property. Fritz had a landfill site there that would take in solid and liquid industrial waste and dispose of the material on the surface of their land. The waste would leach towards 138th Street and enter the sewer and drainage system. Sometimes, it would overflow and Fritz did a number of things to correct that problem. This was taking place around December 1972 and January 1973. Mr. Whitebloom further testified that Fritz tried to come into compliance with defendant's ordinances by pumping the surface water near the drainage ditch back onto its property. This did not work because the water would leach back towards the ditch and onto the road. He stated that he never observed water flowing from the defendant's property onto the road.

Charles Meyers, pollution control officer of defendant, testified that

he had observed water from Fritz's property leaching onto the road and that he had never seen water running onto the street from defendant's property.

At the close of the evidence, the defendant moved orally for a directed verdict based on two grounds: (1) there was a defect in the statutory notice as to the location where the injury occurred, and (2) the evidence showed contributory negligence on the part of plaintiff in the manner in which she was driving, which, as a matter of law, would preclude her recovery. This motion was denied.

Defendant filed a post-trial motion for judgment *n.o.v.* or a new trial based on insufficient proof of: (1) the location of the accident; (2) any connection between defendant and ice on the street; and (3) contributory negligence of plaintiff as a matter of law. This motion was denied.

In this court, defendant first contends that the trial court erred in denying defendant's motion for directed verdict at the close of all the evidence because plaintiff was guilty of contributory negligence as a matter of law and in denying its post-trial motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. A verdict should be directed and judgment *n.o.v.* entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 36, 382 N.E.2d 232; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) A new trial should be granted if the verdict is against the manifest weight of the evidence. (*Jardine*, 73 Ill. 2d 31, 36.) A verdict is against the manifest weight when an opposite conclusion is clearly apparent, or the finding of the jury appears to be unreasonably arbitrary and not based on the evidence. *Russo v. Checker Taxi Co., Inc.* (1978), 67 Ill. App. 3d 379, 385 N.E.2d 32, and cases there cited.

■■ It is preeminently the function of the jury to determine the factual question of whether defendant permitted water from its property to flow onto 138th Street causing ice to form at the point of plaintiff's accident. (See *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 12, 373 N.E.2d 1326.) A determination of what transpired lies chiefly in as-certaining the credibility of the witnesses. Plaintiff's witnesses (Officer Ronald Bonneau, Richard Kittoe, Ronald Boerema, William McNeil and Donald Krause) testified that they saw water flowing from defendant's property onto 138th Street. Richard Kittoe, William McNeil and Donald Krause testified that the water flowed onto 138th Street near Fritz's driveway, the alleged location of the accident. Defendant's witnesses (Leon Turner, Edward Brosius, David Nelligan, Stanley Whitebloom and

Charles Meyers) testified that they had never seen water flowing from defendant's property onto 138th Street. The evidence thus raised an issue of credibility. In addition the evidence produced by plaintiff is affirmative as to the flow of water. The evidence of defendant is negative. The jury chose to believe plaintiff's evidence. " 'A verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable.' " *Jardine*, 73 Ill. 2d 31, 43, quoting *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 87, 368 N.E.2d 1299; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623, 126 N.E.2d 836.

■■ After reviewing all the evidence in its aspect most favorable to plaintiff, we cannot say that it so overwhelmingly favors defendant that no contrary verdict based on that evidence could ever stand. Nor can we say that the verdict is contrary to the manifest weight of the evidence. The evidence adduced by plaintiff and defendant is conflicting. When testimony is contradictory, the determination of the credibility of the witnesses is a matter for the jury and its findings will not be disturbed unless it is clearly evident that the verdict is against the manifest weight of the evidence (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 553, 356 N.E.2d 779). We do not find the jury's acceptance of plaintiff's evidence to be so unreasonable, arbitrary or against the manifest weight of the evidence as to require a new trial. Consequently, we conclude that the trial court did not err in denying defendant's post-trial motion.

■■ Defendant next contends that plaintiff is guilty of contributory negligence as a matter of law. The question of contributory negligence is ordinarily a question of fact to be resolved by the jury. (*Ragan v. Fourco Glass Co.* (1977), 47 Ill. App. 3d 1, 5, 361 N.E.2d 707.) In the instant case, a special interrogatory on the issue of contributory negligence was submitted to the jury. A negative answer was returned. The standard for determining whether plaintiff is guilty of contributory negligence as a matter of law is stated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 503, 229 N.E.2d 504, to be the same as for directed verdicts and judgments *n.o.v.* The standard, though, for setting aside a special interrogatory is manifest weight. *Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 622, 327 N.E.2d 450, *appeal denied* (1975), 60 Ill. 2d 601.

Defendant bases its contention on the following: (1) the temperature was below freezing; (2) plaintiff was a novice driver, with an instruction permit only; (3) she was driving an automobile unfamiliar to her; (4) the street was unlighted; (5) she was traveling with her headlights on low beam; and (6) she was driving 40 to 45 miles per hour. Plaintiff points out the additional factors that: (1) she was within the speed limit; (2) as a passenger, she had traveled the same street the previous night with no

difficulty; and (3) the roads were dry and not slippery. We find that when all of the evidence is viewed in the light most favorable to plaintiff, it does not so overwhelmingly favor defendant that no contrary verdict could ever stand, nor is the special finding of the jury contrary to the manifest weight of the evidence. Thus, we cannot say that plaintiff was guilty of contributory negligence as a matter of law.

■ Defendant's final contention is that there was no duty on defendant to protect against ice forming on the street. Although defendant did not raise this contention in its post-trial motion, we have decided to consider the merits of the issue. Whether a duty is owed is a question of law. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.) There is ordinarily no duty on the part of a landowner to remove natural accumulations of ice and snow. (*Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 567, 372 N.E.2d 822.) However, one who has contributed to the creation of ice by artificial means rather than natural causes has a duty to remove or remedy that condition. (*Lansing*, 69 Ill. 2d 562, 569-70.) Therefore, liability may be incurred when ice forms from artificial causes resulting from defendant's use of the area concerned. (*Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 1068-69, 307 N.E.2d 449, *appeal denied* (1974), 56 Ill. 2d 582.) Consequently, it was incumbent upon the plaintiff to prove that the ice was formed by the conduct of defendant. By returning a verdict in favor of plaintiff, the jury necessarily found that the ice was formed from water flowing from defendant's property. Since the ice was formed from artificial conditions caused by defendant, it had a duty to remove or remedy that condition.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.