176

MELVIN D. HOXSEY, Special Adm'r of the Estate of Marlys Kaye Hoxsey, Deceased, Plaintiff-Appellant, v. DWAYNE HOUCHLEI, ROAD COMMIS-SIONER OF SHOAL CREEK TOWNSHIP et al., Defendants-Appellees.

Fifth District   No. 5—84—0221

Opinion filed July 24, 1985.

James E. Buchmiller, Ltd., of Greenville, for appellant.

Jack Johnston, of Burnside, Dees, Johnston & Choisser, of Vandalia, for appellees.

PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals a judgment of the circuit court rendered upon a jury verdict finding defendants not guilty of negligence in plaintiff's action for the wrongful death of his wife. The factual setting of the case is unusual; the issues presented involve the question of duty.

The death of plaintiff's decedent occurred at about 10:30 in the morning of Sunday, March 31, 1980. Plaintiff's decedent, his wife, accompanied by her then 11-year-old daughter, left their home in rural Bond County, driving their 3/4-ton pickup truck. Decedent and plaintiff had moved to that home in August of 1979. The purpose of the trip was to visit a friend. Her chosen route was a winding dirt road that passed through bottom land and crossed Bear Creek. A culvert (which the parties sometimes refer to as a bridge) was in place underneath the road as it crossed creek and bottoms. It had rained very hard on the night prior to the decedent's trip. Although there was an alternate route available to the decedent that would have kept her out of the creek and bottoms, she nevertheless chose to travel the road across the creek and bottoms. That road was one under the jurisdiction of and maintained by Shoal Creek Township and its road commissioner, defendant Houchlei. Approximately one-half mile from her house, decedent saw that the creek and bottoms were in flood because of the previous night's rainfall and that the road she was on was covered by the floodwaters ahead.

Decedent had traveled the road across the bottoms many times but she had never seen it in flood, as it was on the date of her fatal trip. As decedent approached the flooded area, she decided to continue through the water, although both road and culvert were covered by water. At a point just after decedent had crossed the culvert, the engine of her pickup drowned out, and she was stalled. Decedent got out of the pickup, placed her daughter on her shoulders and started walking back toward home. As she reached the culvert she lost her footing and fell, and the current swept her and her daughter away. They grabbed hold of a log that was floating in the stream. The daughter was on an end that carried her to or near a place where she could stand, and she was able to make her way back to the pickup where she was later rescued. The decedent, unable to swim, drowned.

From the inception of the ensuing lawsuit, the parties and the court were concerned with the duty aspect of the case, and that concern follows the case into this court. Plaintiff constructed his case upon the failure to post signs warning of possible flooding of the roadway, the failure to place road barricades after the flooding had occurred, the failure to erect bannisters or railing on the culvert and the failure to erect posts extending above extremities of the culvert to indicate its breadth.

Trial was had on plaintiff's second amended complaint. The complaint was in four counts that variously charged negligence and wilful and wanton misconduct and sought damages for wrongful death and

payment of funeral expenses under the applicable statute. Each count alleged five acts of negligence: (1) failure to erect signs warning of flood waters, (2) failure to erect barricades, (3) failure to erect signs indicating alternate routes, (4) failure to erect signs warning of flood waters in violation of section 11—304 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—304), which requires local authorities to erect traffic control devices, and (5) failure to erect barricades in violation of the same statute. Prior to trial, the court granted defendants' motion to dismiss as to subparagraphs (2), (3) and (5), leaving (1) and (4) as the issues to be tried. The case was tried under the principles of comparative negligence announced in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, and the jury returned a verdict of not guilty as to both defendants on all counts of the complaint.

The initial, and determinative, issue is whether the defendants were under a duty to plaintiff's decedent to take measures to protect her from injury or death under the circumstances presented in this case.

The jury was given, and answered, three special interrogatories. The first asked whether the defendants knew or should have known of the presence of flood waters at the time of the occurrence and was answered "no." The second asked whether by failing to erect signs to warn of flood waters, the defendants breached any duty they owed deceased and was answered "yes." The third asked whether the breach of "this" duty was the proximate cause of the death of the decedent and was answered "no."

■ Plaintiff contends on appeal that the trial court committed error when it struck subparagraphs (2), (3) and (5) of the negligence allegations. Plaintiff's contention is founded upon his assertion that defendants were under both a common law and a statutory duty to take the measures indicated in the stricken paragraphs. Defendants counter that the court was not only correct in striking subparagraphs (2), (3) and (5), but assert that it should have stricken subparagraphs (10 and (4) as well, because under the authority of *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.W.2d 822, defendants owed no duty, either common law or statutory, to the decedent on the occasion in question. We agree.

Both parties concede, and argue accordingly, that the outcome of the case turns upon whether or not defendants owed a duty to plaintiff's decedent under the circumstances presented. In *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538, our supreme court stated:

"Necessary to any recovery based on the theory of common

law negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. Whether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court. (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 37.)"

In the *Lansing* case plaintiffs brought suit against the county for wrongful death and personal injuries that occurred when a car went out of control on an ice-covered county road and crashed. In that case, as in the one under consideration, the defendant local public entity had purchased a policy of liability insurance that ostensibly constituted a waiver of immunity from liability as granted by section 9—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1975, ch. 85, par. 9—103). The plaintiff therefore argued that there was a waiver of the immunity afforded by section 3—105 of the Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 3—105), which provided:

"Neither a local public entity nor a public employee is liable for an injury caused by the effect on the use of streets, highways, alleys, sidewalks or other public ways, or places of weather conditions as such. For the purpose of this section, the effect on the use of streets, highways, alleys, sidewalks or other public ways of weather conditions includes the effect of wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets, highways, alleys, sidewalks, or other public ways and place resulting from weather conditions."

The supreme court held in *Lansing* that the waiver-by-insurance-coverage argument was inapplicable in the case because nonliability of the county was not the result of an immunity conferred by the Tort Immunity Act; rather, it was an absence of liability in circumstances where the defendant public entity had taken no action contributing to the injury. That absence-of-liability rule had been announced in *Graham v. City of Chicago* (1931), 346 Ill. 638, 178 N.E. 911, and *Strappelli v. City of Chicago* (1939), 371 Ill. 72, 20 N.E.2d 43, and was preserved in the Tort Immunity Act by section 2—111 (Ill. Rev. Stat. 1975, ch. 85, par. 2—111), which stated:

"Nothing contained herein shall operate to deprive any public entity of any defense heretofore existing and not described herein."

Plaintiff argues that *Lansing* should not be controlling of this case because it involved the presence of ice that was a general and wide-spread condition, whereas the flood waters in this case were localized and contained in Bear Creek and its bottoms. However, we regard this argument as stating neither a distinction nor a difference. Although the heavy rains that produced the flooding in the case under consideration were general, their effect was upon the road that decedent was traveling. Similarly, the generalized ice storm involved in *Lansing* covered the road the plaintiffs there were traveling. In both cases, the condition of the road resulted from weather conditions, and in neither case had the public entity taken any action that contributed to the injury.

We have determined that, under the authority of the *Lansing* case, the trial court was correct in striking subparagraphs (2), (3) and (5) of the negligence charges in the complaint.

■ Although not presented as an issue, we would comment that, on the basis of *Lansing*, the trial court should also have stricken subparagraphs (1) and (4) of the negligence charges and entered judgment on the pleadings. In the *Lansing* case the appellate court had held that while the county had no duty to remove ice and snow from the highway, it did have a duty to warn motorists of their presence on the highway. This holding was reversed by the supreme court because there was no allegation that the county had any notice of the ice conditions in sufficient time to provide a warning. In the case under consideration the question of notice was a debated issue. The defendant Houchlei testified that he did not know of the flooding of the road on the occasion in question. Plaintiff argues that defendant should have known of the flooding because of the propensity of Bear Creek to overflow the road in times of heavy rains. The testimony of witnesses placed the number of annual flooding episodes from two to three to as many as 12 to 15. In any event, whether defendants had notice of the flooding is of no consequence to the outcome of the case because, as the court stated in *Lansing*:

> "Apart from the question of notice, we are of the opinion that no duty was imposed upon the defendants to warn users of the highway of conditions resulting from the natural accumulation of snow and ice. As the plaintiffs admitted in oral argument, a decision in their favor would require the defendants to post warning signs under comparable weather circumstances on every highway subject to their jurisdiction. A similar duty would arise for townships, forest preserve districts, park districts, and any other type of local public entity included under

section 1—206 of the Act. The impracticability and the expense of posting warning signs, and the demands on available manpower would be comparable to those to which the court referred in the *Graham* decision." *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 573, 372 N.E.2d 822, 827.

For the foregoing reasons the defendants were under no duty to the decedent on the occasion in question in any of the particulars alleged in plaintiff's complaint, and the judgment of the trial court will be affirmed.

Because of the highly unusual, even freakish, nature of decedent's unfortunate accident, we feel impelled to say that even if defendants had been under a duty to the decedent on the occasion of the accident (*cf. Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 306 N.E.2d 287), the accident would have been well outside the scope or range of protection of such duty so as to render defendants not liable. (See Restatement (Second) of Torts sec. 435(2), comment c (1965). *Lemings v. Collinsville School District No. 10* (1983), 118 Ill. App. 3d 363, 454 N.E.2d 1139 (Jones, J., specially concurring).) Stated in terms of more general usage, the action, or lack of it, by defendants was not the "proximate cause" of the death of decedent, as that term is used in its application as an aspect of duty. (*Cf.* Green, *Proximate Cause in Texas Negligence Law*, 28 Tex. L. Rev. 621 (1950).) Regarding "proximate cause" as an aspect of duty, Professor Prosser has said:

" 'Proximate cause'—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct." Prosser, Torts sec. 41, at 239 (4th ed. 1971).

Indulging in one further bit of *dictum*, we would make the observation that the jury in this case found that the cause of the accident was 100% that of the decedent. In broad daylight, and in her own truck, she deliberately drove into floodwaters that covered a road she had traversed many times previously. The finding is well supported by the evidence of the case.

Affirmed.

HARRISON and WELCH, JJ., concur.