BRENDA ENGRAM, as Special Adm'r of Estate of Dorothy Williams, Deceased, Plaintiff-Appellee, v. CHICAGO HOUSING AUTHORITY, Defendant-Appellant.

First District (1st Division)   No. 1—97—2488

Opinion filed March 29, 1999.

Pretzel & Stouffer, Chartered, of Chicago (Matthew J. Egan and Matthew C. Kincaid, of counsel), for appellant.

Law Offices of John J. O'Sullivan, of Chicago (John J. O'Sullivan, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Brenda Engram (plaintiff), as special administrator of the estate of Dorothy Williams, filed this lawsuit against the Chicago Housing Authority (defendant) to recover damages for the death of her mother, Dorothy Williams (decedent). Decedent died of carbon monoxide poisoning after covering the vents in her oven and leaving her oven door open to heat her apartment.

Following a jury trial in the circuit court of Cook County, the court

declared a mistrial due to an improper communication to the jury. However, the court allowed the jurors' deliberations to continue, and the jury later returned a verdict that the trial judge received "under seal." The jury found in favor of plaintiff and assessed damages at $280,612.24. The jury assessed the contributory negligence of the plaintiff's decedent at 49%, but reduced plaintiff's damages by 51% to $137,500.

The trial court granted plaintiff's motion to vacate the mistrial and entered judgment on the verdict in favor of the plaintiff in the amount of $137,300. The trial court subsequently denied defendant's posttrial motion wherein it moved that judgment be entered in its favor pursuant to section 2—1116 of the Code of Civil Procedure (735 ILCS 5/2—1116 (West 1992)) and renewed its motion for a directed verdict and objections to a number of the trial court's rulings. Pursuant to plaintiff's motion, the court changed the verdict to increase plaintiff's damages from $137,500 to $143,112.24.

Defendant then filed this appeal, arguing that the trial court erred by (1) denying defendant's motion for a directed verdict where defendant owed no duty to warn decedent about the practice of using her oven to heat her apartment; (2) admitting medical opinion testimony from an undisclosed physician which, if excluded under Rule 213(g) (166 Ill. 2d R. 213(g)), would have required the entry of a directed verdict for the defendant; (3) admitting opinion testimony from plaintiff's expert witness about undisclosed standards and warnings and the defendant's alleged duty to warn its tenants about the dangers of gas ovens; (4) ignoring section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3—102 (West 1992)) and supreme court precedent to instruct the jury that the defendant owed a duty to exercise ordinary care for the plaintiff's safety and to be free from negligence; (5) refusing to give Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989) while simultaneously instructing the jury that the missing witnesses could recover damages for loss of society; (6) allowing the jury to continue deliberating and accepting a "sealed verdict" after the court had already declared a mistrial; (7) vacating its order of mistrial and entering judgment on the verdict where a discharged alternate juror had been communicating with the jurors and the court did not ascertain whether these communications affected the deliberations; and (8) changing the amount of the jury's inconsistent verdict to negate a finding that required entry of judgment in favor of defendant and considering unsworn written statements from a group of jurors after they had been discharged. Furthermore, defendants allege (1) the jury's verdict was against the manifest weight of the evidence; and (2)

the cumulative effect of the trial court's errors deprived the defendant of a fair trial. Because we agree with defendant's first argument regarding duty, we need not address the remaining issues on appeal. We reverse and enter judgement in defendant's favor.

In September 1992, decedent was 72 years old and the mother of five adult children. Decedent had been a tenant of defendant's buildings for much of her adult life. She lived by herself in an apartment in defendant's low-rise housing at 1440 South Blue Island Avenue in Chicago. She was not in good health, as she suffered from diabetes, high blood pressure, a previous heart attack, iron and hemoglobin deficiency and a recent knee fracture.

It had been decedent's long-standing practice to use the gas oven in her apartment for heat. She did so at her current apartment and her former apartment on Throop Street. Decedent would turn the oven up to 350 or 400 degrees, open the door and use the oven to heat her apartment.

Decedent also lined the entire oven with aluminum foil to cover the air vents. This practice prevented the oven from obtaining sufficient oxygen, which resulted in an incomplete combustion of the gas and caused the oven to generate excess amounts of carbon monoxide. Decedent's practice of running the oven with the door open resulted in the gas flame burning continuously, rather than cycling on and off as would occur if she had closed the oven door.

At some time between September 9 and September 12, 1992, decedent turned on her oven lined with aluminum foil and opened the oven door as was her habit, and went to take a bath. Plaintiff's daughter, Kimberly Engram, testified that she went to decedent's apartment in the evening of Saturday, September 12, 1992, after plaintiff had been unable to contact decedent by phone. Plaintiff had last spoken to decedent on Wednesday, September 9. When Kimberly Engram arrived at the apartment, the doors were locked. No one answered the door, so Kimberly called plaintiff, who called the police. Decedent was subsequently found dead in the bathtub. The space heater plaintiff had given decedent was still in the apartment unused.

Before trial, defendant propounded interrogatories to the plaintiff pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220), and when the new rules took effect in 1996, pursuant to Supreme Court Rule 213 (166 Ill. 2d R. 213(g)). Defendant requested that the plaintiff disclose all trial witnesses, all opinion witnesses, the substance of each witness's testimony, and the bases of each opinion plaintiff intended to adduce from her witnesses at trial. Plaintiff filed answers to Rule 213 interrogatories disclosing one opinion witness, a "consulting engineer" named Robert Stanis, and three trial witnesses. Notably, plaintiff did

not disclose any witness who would testify as to the cause of decedent's death.

After being assigned to trial, defendant brought a motion *in limine* to preclude plaintiff from presenting any testimony, medical or otherwise, as to the cause of death of decedent. Plaintiff's only disclosed opinion witness, Robert Stanis, had admitted during his discovery deposition that he did not have any medical qualifications or opinions about the cause of death. However, the trial court denied defendant's motion and allowed plaintiff to elicit cause-of-death and other opinion testimony from Dr. Mitra Kalelekar, a deputy physician in the Cook County medical examiner's office, though plaintiff failed to disclose Dr. Kalelekar as a witness in answers to Rule 213 interrogatories. The court allowed defendant to depose Dr. Kalelekar one hour before opening statements.

During the trial, plaintiff testified that, during the winter of 1991-92, she informed defendant's janitor that the heat in her mother's apartment was low and that condensation formed when decedent ran the oven to gain heat. Plaintiff added that the same janitor had once entered her mother's apartment to mop up condensation and that he told decedent she could get a space heater from defendant. According to plaintiff, neither the janitor nor anyone else from defendant's office warned decedent about the danger of using her oven for heat. The janitor confirmed that it was defendant's policy to give a space heater to any tenant who asked for one, free of charge.

Melvin Brooks was the superintendent of the group of buildings where decedent resided. He testified that he was aware some tenants would use their ovens for heat and he instructed his staff, on finding such a person, to inform the tenant not to use the oven for heat. Whenever Brooks personally learned that a tenant was using his or her oven for heat, he would tell the tenant to stop, advise him or her that free space heaters were available, and inform defendant's heating plant personnel of low heat in that tenant's apartment.

The plaintiff's expert, Robert Stanis, testified that he inspected the oven in decedent's apartment on October 15, 1992, along with plaintiff's attorney. Stanis conceded that he had no knowledge of and no opinions about the condition of the oven on that date or at any other time. The court then allowed Stanis to testify about the condition of the oven and defendant's duty to warn its tenants about the oven's dangers.

Stanis testified that he again tested the oven on October 15, 1992, and found that it produced carbon monoxide. He further testified that his opinions depended on American National Standards Institute (ANSI) standards, despite having denied at his deposition prior to trial

that the ANSI standards applied to this case. He testified that ANSI had promulgated standards for the manufacturers for gas ovens and that he was not aware of any oven on the market that did not comply with the ANSI requirements. He testified that ANSI requires that an oven not produce more than 800 parts per million (ppm) of carbon monoxide over a certain period. Stanis testified that, in his opinion, ANSI standards required an oven manufacturer to warn users in clear and concise language about the dangers of covering vent openings with aluminum foil.

Plaintiff never supplemented her answers to Rule 213 interrogatories or otherwise disclosed Stanis' new opinions about the ANSI standards. The trial court denied defendant's objections to and motion to strike all of Stanis' testimony about the ANSI standards.

Mary Wiggins worked for defendant as a collateral clerk. She kept records about tenants' rent obligations. Wiggins testified that defendant gave an informational handbook to tenants entitled "Formula for Living." The handbook contained what plaintiff's expert, Robert Stanis, called "a very strong warning to users of cooking ranges not to use the range as a space heater to heat the living environment. *** It's a very good warning in the sense that it uses what I call brutal candor. It says this can kill you so it's very strenuous. It talks especially about deadly carbon monoxide."

Debra Barlow, one of decedent's daughters, testified that she had warned her mother not to use the oven for heat. Another daughter, Beverly Calhoun, had also warned decedent not to use the oven for heat. Decedent continued to decline her son's offer to buy her a space heater so she would stop using the oven for heat. Plaintiff also warned decedent not to use the oven for heat and actually bought decedent an electric space heater that came equipped with an automatic shut-off switch. However, decedent declined to use the space heater.

Defendant presented opinion testimony from Joseph Leane, a licensed professional engineer and certified forensic engineer. Leane had inspected the oven at his laboratory by hooking it up to a gas source and operating the unit in a closed environment. He measured the carbon monoxide output of the oven, both with foil covering the air vents and without. Leane found the oven to be in proper working condition. With aluminum foil in place, the oven produced 220 to 230 ppm of carbon monoxide; without the foil, it produced 145 to 160 ppm. Leane testified that both levels were well within the range allowed by the ANSI standards. He also testified that, in his opinion, using a gas oven to heat a room with foil obstructing the air vents is a dangerous misuse of the oven.

At the close of plaintiff's case and again at the close of evidence,

defendant moved for directed verdict based on section 3—102 of the Tort Immunity Act and Illinois Supreme Court and Appellate Court precedent. The trial court denied the motion on both occasions. Defendant renewed its motion for a directed verdict in its posttrial motion and, in the alternative, moved for a new trial on both liability and damages. The court denied defendant's posttrial motion and defendant timely filed this appeal.

Defendant argues the trial court erroneously denied defendant's motion for directed verdict where the uncontradicted evidence established that defendant did not owe a duty to provide heat to the decedent's apartment, that the apartment and its equipment were in good condition, and that the decedent died from her own misuse of the oven as a general room heater. However, in her brief, plaintiff responds that she has not argued that "the stove was defective or in a state of disrepair, or that defendant owed a duty to provide heat, or that defendant's tenant handbook itself imposes a duty on defendant." Instead, plaintiff simply contends that defendant owed a duty to warn plaintiff's decedent about the dangers of using the gas stove that defendant placed in her apartment. Plaintiff asserts that defendant had knowledge that its tenants used their stoves to supplement or provide heat in their apartments and could foresee someone being seriously injured or killed in doing so.

■ In an action for negligence, the plaintiff must set out sufficient facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *Rowe v. State Bank*, 125 Ill. 2d 203, 215 (1988). In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law. *Rowe*, 125 Ill. 2d at 215; see *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991).

■ It is well recognized that the traditional common law duty of local public entities concerning public property is to maintain that property in a reasonably safe condition. *Curtis v. County of Cook*, 98 Ill. 2d 158, 163 (1983). More specifically, however, in terms of the principles of landlord and tenant law that are applicable in this case, "a landlord is not liable for injuries sustained on the premises leased to the tenant." *Vesey*, 145 Ill. 2d at 413. This principle is expounded upon in *Rowe*, 125 Ill. 2d at 220-21:

"It is axiomatic that if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. [Citations.] Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control."

■ However, because defendant is a municipal corporation, and thus a "local public entity" for purposes of the Tort Immunity Act, whether defendant owes a duty of ordinary care to maintain its property for the benefit of the plaintiff in this matter is governed by the Tort Immunity Act. 745 ILCS 10/1—206 (West 1992); see *Davis v. Chicago Housing Authority*, 136 Ill. 2d 296, 298 (1990); see *Vesey*, 145 Ill. 2d at 411. The Tort Immunity Act provides that its purpose "is to protect local public entities and public employees from liability arising from the operation of government. It grants only immunities and defenses." 745 ILCS 10/1—101.1(a) (West 1992). Section 3—102 of the Tort Immunity Act provides:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102 (West 1992).

In interpreting the scope of the Tort Immunity Act, the courts have repeatedly held that the Tort Immunity Act does not create any new liabilities for negligent acts or omissions that did not previously exist but, rather, "articulates the common law duty to which the subsequently delineated immunities apply." *Horrell v. City of Chicago*, 145 Ill. App. 3d 428, 435 (1986); *Vesey*, 145 Ill. 2d at 412. Consistent with section 3—102 of the Tort Immunity Act, the supreme court has held that defendant, like any landlord, is generally not liable for injuries to a tenant that occur on the demised premises that are under the tenant's control. See *Vesey*, 145 Ill. 2d at 414 (public housing authority not liable when tenant injured from exposed steam heating pipe inside public housing apartment). In fact, courts have repeatedly found that "the Tort Immunity Act simply codifies the common law duty of a local public entity to maintain its property." *Goodknight v. Piraino*, 197 Ill. App. 3d 319, 327 (1990). Accordingly, defendant had no duty to use ordinary care in maintaining the premises leased to decedent and is not responsible for injuries occurring on leased premises under decedent's control.

However, plaintiff responds that the more appropriate inquiry is whether defendant had a duty to warn decedent of the dangerousness of the gas stove defendant placed in her apartment. Again, we find that defendant owed no duty to decedent.

■ Generally, the duty to warn must have some predicate negligent action before it comes into play. *Carrizales v. Rheem Manufacturing Co.*, 226 Ill. App. 3d 20, 31 (1991). For example, in *Newcomm v. Jul*, 133 Ill. App. 2d 918 (1971), a landowner was not liable for failure to warn of an accumulation of ice and snow absent a showing that the ice and snow was a result of an unnatural or artificial accumulation and would have initially imposed liability. The court stated that "[t]he duty óf warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given." *Newcomm*, 133 Ill. App. 2d at 921; see also *Spirn v. Joseph*, 144 Ill. App. 3d 127 (1986); see also *Chisolm v. Stephens*, 47 Ill. App. 3d 999 (1977). In such a situation, there can be no liability for failure to warn.

Our supreme court later approved the holding of *Newcomm* in *Lansing v. County of McLean*, 69 Ill. 2d 562, 574 (1978). In the context of public highways, the court found that if the defendant had no duty to remove snow and ice, defendant had no duty to warn users of the highway that it had not done so. *Lansing*, 69 Ill. 2d at 573-74. As plaintiffs in *Lansing* admitted in oral argument, a decision in their favor would require the defendants to post warning signs under comparable weather circumstances on every highway subject to their jurisdiction. A similar duty would arise for townships, forest preserve districts, park districts and any other type of local public entity. *Lansing*, 69 Ill. 2d at 574; but see *Weber v. Chen Enterprises, Inc.*, 184 Ill. App. 3d 847 (1989) (failure to warn by providing proper lighting was enough upon which to predicate a cause of action even though defendant would not be liable for its failure to remove natural accumulations of snow or ice).

In *Sculles v. American Environmental Products, Inc.*, 227 Ill. App. 3d 741, 744 (1992), a warehouse worker was injured when his hand became caught in a box baler. The court held that defendant, an independent service repair worker, was not under a contractual obligation to provide plaintiff with safety information. Instead, defendant serviced the machine before the accident for problems unrelated to plaintiff's accident. The court held that, since defendant was not responsible for the continued existence of the hazard on the box baler, it did not have a duty to warn of it. *Sculles*, 227 Ill. App. 3d at 745.

■ Moreover, in the instant case, defendant is not liable for injuries occurring on premises leased to tenants under the Tort Immunity Act. Ill. Rev. Stat. 1985, ch. 85, par. 3—102. To that end, under *Newcomm* and its progeny, defendant is under no duty to warn of dangers on the leased premises that may lead to injury. See *Newcomm*, 133 Ill. App. 2d at 921; *Lansing*, 69 Ill. 2d at 574.

Plaintiff cites *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432 (1992), to support her argument that defendant had a duty to warn because it had knowledge tenants used their ovens to heat their apartments and, thus, could foresee someone being seriously injured or killed. Plaintiff contends this knowledge was evidenced by the warning in the "Formula for Living" tenant handbook and testimony of its employees.

The court in *Lee* held there is a duty to warn imposed upon a person who maintains a dangerous artificial condition when the person is aware of the possibility that others will come into dangerous proximity of the condition. 152 Ill. 2d 432. The court based its decision on the fact that the Chicago Transit Authority (CTA) was aware of the dangers posed by the electrified third rail as evidenced by the warning signs the CTA placed in front of the rail. The court was persuaded by Restatement (Second) of Torts, section 337, at 195 (1965), which states in part that if a landowner knows of or reasonably anticipates the presence of a trespasser in a place of danger, the landowner is held to a duty of ordinary care to protect and/or warn the trespasser. We do not find *Lee* applicable to this case.

*Lee* is distinguishable because it imposes a duty upon a landowner where a trespasser is in a place of danger. As earlier noted, plaintiff is not alleging that the stove was dangerous by itself, but is arguing that once defendant placed a dangerous instrument like a gas stove in decedent's apartment, defendant was obligated to warn the decedent of the various risks of using the gas stove, including misusing the stove to heat her apartment. Plaintiff is seeking to expand the duty a landowner owes a tenant beyond that recognized by the authorities cited and discussed herein.

We decline to expand the duty owed by defendant in this manner. Based upon our disposition of the duty issue, we need not discuss the other assertions of error raised by defendant.

For the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.