JOHN KURCZAK, Plaintiff-Appellant and Cross-Appellee, v. NOEL CORNWELL, f/k/a Noel Buczkowski, Defendant-Appellee and Cross-Appellant.

Second District No. 2—05—0017

Opinion filed September 16, 2005.

Aldo E. Botti and Carla Labunski, both of Botti, Marinaccio & DeLongis, Ltd., of Oak Brook, for appellant.

Daniel E. Compton, of Brittain & Ketcham, P.C., of Elgin, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

In this case, we consider whether a paved walkway on residential property constitutes a "sidewalk[ ] abutting the property" under the Snow and Ice Removal Act (Act) (745 ILCS 75/2 (West 2000)). On January 7, 2001, plaintiff, John Kurczak, slipped and fell on a paved walkway leading from the driveway to the home of defendant, Noel Cornwell, f/k/a Noel Buczkowski. After plaintiff filed a one-count complaint alleging negligence, defendant moved for summary judgment, arguing that plaintiff's negligence claim was barred by the Act. The trial court granted summary judgment in favor of defendant. In

addition, the trial court allowed plaintiff to amend his complaint to add a second count, alleging willful and wanton conduct. Defendant moved for summary judgment as to count II, which the trial court granted. Plaintiff appeals the summary judgment orders, arguing that (1) count I, alleging negligence, is not barred by the Act, and (2) issues of fact were raised with respect to count II, alleging willful and wanton conduct. Defendant cross-appeals and argues that the trial court erred by allowing plaintiff to amend his complaint. We affirm.

## I. BACKGROUND

### A. Procedural History

On December 18, 2001, plaintiff filed a one-count complaint alleging that he slipped and fell due to the dangerous condition of defendant's walkway. Among several theories of negligence concerning the walkway, plaintiff alleged that defendant carelessly and negligently cleared the walkway so as to leave an unnatural accumulation of ice or snow in an area that defendant knew, or should have known, would be used by persons seeking access to defendant's property. According to plaintiff, defendant's negligence was the proximate cause of his fall, which caused injuries to his ankle, foot, and leg. Defendant's answer included an affirmative defense that plaintiff's own negligence was the proximate cause of plaintiff's accident. Defendant alleged, among other things, that plaintiff failed to avoid open and obvious accumulations of ice or snow and traversed the walkway at an unreasonable speed. Plaintiff subsequently filed an amended complaint alleging that defendant carelessly and negligently failed to repair a gutter that leaked onto the walkway/stoop and caused a frozen puddle of ice.

On June 4, 2004, defendant moved for summary judgment. According to defendant, plaintiff failed to establish that defendant owed him a duty, and plaintiff failed to provide any direct or circumstantial evidence that he slipped and fell on an unnatural accumulation of ice or snow as he "rush[ed] in a hurry" from the stoop to his car. On June 28, 2004, defendant amended her motion for summary judgment and argued that plaintiff's negligence claim was barred by the Act. Because plaintiff had alleged only negligence, and the Act requires proof of willful and wanton misconduct, defendant argued that plaintiff's first amended complaint should be dismissed.

On August 26, 2004, the trial court held a hearing on defendant's amended motion for summary judgment. Defendant argued that, when looking at the evidence in the light most favorable to plaintiff, plaintiff was unable to show that any accumulation of ice or snow caused his fall, that defendant owed him a duty, or that defendant's conduct was willful and wanton. Although the trial court reserved its decision until

September 22, 2004, it indicated that plaintiff's negligence claim would be barred by the Act.

On September 9, 2004, plaintiff moved to amend his first amended complaint to add a second count, alleging willful and wanton conduct. According to plaintiff, the second amended complaint would cure any defects of the current pleading, defendant would not suffer surprise or prejudice, and the motion was timely because the trial court had not yet entered summary judgment.

On October 20, 2004, the trial court granted defendant's motion for summary judgment as to count I of plaintiff's first amended complaint, alleging negligence. In addition, the trial court granted plaintiff leave to amend his first amended complaint and add a second count, which alleged willful and wanton conduct. In his second amended complaint, plaintiff alleged the following. Defendant was warned before January 7, 2001, that water that was dripping from the roof overhang was freezing on the walkway and/or stoop below; defendant knew that her nephew, Daniel Simpson, had slipped and fallen on the walkway and/or stoop on a patch of ice directly below the roof overhang approximately one week before plaintiff's fall; and defendant willfully and wantonly failed to remove the snow or ice that dangerously and unnaturally accumulated on the walkway and/or stoop beneath the roof overhang.

On October 28, 2004, defendant filed a motion for summary judgment as to count II of plaintiff's second amended complaint. According to defendant, assuming, *arguendo*, that plaintiff was able to show that he fell on an unnatural accumulation of ice, plaintiff could not show that defendant willfully and wantonly allowed or created an unnatural accumulation on the walkway or stoop. On January 6, 2005, the trial court granted defendant's motion for summary judgment as to count II of plaintiff's second amended complaint. Plaintiff filed a timely notice of appeal and challenges both summary judgment orders. Defendant cross-appeals, arguing that the trial court erred by allowing plaintiff to amend his first amended complaint.

## B. Deposition and Expert Testimony

The record contains the following deposition testimony. On January 7, 2001, around 9 p.m., plaintiff dropped off his son at the home of defendant, plaintiff's ex-wife. There was snow on the ground. A short time later, plaintiff discovered a box of items that his son had left behind. Plaintiff returned to defendant's home, parked in the driveway, and walked along a paved walkway that connected the driveway to a stoop at the front door of the home. Plaintiff left the box on the stoop, rang the doorbell, and immediately turned to leave in order to avoid

confronting defendant's husband. As plaintiff took one or two steps off the stoop, he slipped and fell on a patch of ice, injuring his ankle. Although plaintiff did not see what he slipped on, he assumed that it was ice. Plaintiff noticed "ice melt" on his hand and clothing after he got up.

Daniel Simpson, defendant's nephew, stated that a paved walkway curves around from the driveway to an eight-inch stoop at the front door of defendant's home. In January 2001, about a week prior to plaintiff's fall, Simpson stepped off the stoop and slipped on ice, landing on his knee. Simpson believed that it happened around 5 or 6 p.m. After falling, Simpson noticed a couple of drops coming down from the corner of the roof above the stoop. Simpson went inside the house and told his mother-in-law, Mary Lou Glab, to get some salt. They sprinkled calcium chloride on the walkway. When Simpson returned to the house sometime during the week before plaintiff's fall, he observed "ice melt" on the sidewalk.

Defendant stated that, on January 7, 2001, there was snow on the ground but the paved walkway between the driveway and the front door had been shoveled. Although defendant recalled "some patches of ice" on the walkway, the area had been treated with salt or an ice melt product. Prior to plaintiff's fall, defendant never received any complaints of ice patches or of someone slipping on the walkway.

Plaintiff's son, Ronald Kurczak, stated that he did not recall seeing ice on the walkway or the stoop on the evening of January 7, and he had no trouble walking from the car to the front door. It had snowed prior to January 7, and either his stepfather, Steven Cornwell, or his aunt, Mary Lou Glab, had shoveled the walkway between the driveway and the stoop. They typically used ice melt. According to Ronald, snow that melted over the top of the gutter would occasionally create a frozen puddle on the right-hand corner of the stoop, but not where people walked. That evening, after Ronald went inside, he heard the doorbell. Ronald and defendant, his mother, went to the door and saw plaintiff sitting on the stoop with his feet on the walkway. Plaintiff complained that his ankle hurt and defendant helped him to the car.

Defendant's sister, Mary Lou Glab, stated the following in her deposition. On weekdays, Glab watched Ronald at defendant's home until 8 or 9 p.m. If it snowed when Glab was at defendant's house, she would shovel part of the driveway and the walkway between the driveway and the front door. Depending on how much snow fell, she would use a shovel, a snowblower, or a broom. If necessary, she would also use ice melt. When snow melted on the roof, some of the water dripped onto the right corner of the stoop and caused an icy patch. Sometime before plaintiff's fall, Glab told defendant to put ice melt on the stoop so that the water would not freeze at night.

Defendant's husband, Stephen Cornwell, stated that it had snowed a few days to a week prior to January 7. Cornwell's normal routine was to clear the stoop with a shovel, clear the walkway with a snowblower as well as a shovel, if necessary, and then apply ice melt. Cornwell remembered clearing the walkway and applying ice melt after it snowed a few days to a week before plaintiff fell. According to Cornwell, plaintiff's coat had a lot of salt on it after he fell, which Cornwell knew because defendant washed the coat for plaintiff. Prior to the incident involving plaintiff, Cornwell did not recall anyone falling on the walkway or complaining that it was slippery.

Also part of the record is an inspection report by George Halusek, a roofing and gutter expert who has worked as a roofing, gutter, and siding contractor for 25 years. On August 21, 2003, Halusek performed an inspection of defendant's "gutter/downspout system." Halusek visually inspected the gutter system and also flooded it to check for leaking. In Halusek's opinion, the gutter and downspouts at defendant's house were intact, did not leak due to a defective condition, and would not have caused an unnatural accumulation of water or ice on the walkway or stoop underneath the gutter system.

## II. ANALYSIS

### A. Negligence Count

In this case, the trial court granted summary judgment in favor of defendant as to count I because it determined that a negligence cause of action was barred by the Act. On appeal, plaintiff asserts that the Act does not bar his negligence claim, because the walkway is not a "sidewalk" and does not "abut" the property within the meaning of the Act. According to plaintiff, the Act was intended to apply to the removal of snow and ice from *public* sidewalks *bordering* residential property, as opposed to paths or walkways located within the boundaries of private residential property. We set forth the relevant provisions of the Act.

■ Section 1 provides:

"It is declared to be the public policy of this State that owners and others residing in residential units be encouraged to clean the sidewalks abutting their residences of snow and ice. The General Assembly, therefore, determines that it is undesirable for any person to be found liable for damages due to his or her efforts in the removal of snow or ice from such sidewalks, except for acts which amount to clear wrongdoing, as described in section 2 of this Act." 745 ILCS 75/1 (West 2000).

Section 2, which requires willful or wanton conduct to impose liability, states:

"Any owner, lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party, who removes or attempts to remove snow or ice from sidewalks abutting the property shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." 745 ILCS 75/2 (West 2000).

The primary rule of statutory construction is to give effect to the legislature's intent. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002). The best evidence of legislative intent is the language used in the statute itself. *Stroger*, 201 Ill. 2d at 524. The language of the statute must be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). When a statute contains language with an ordinary and popularly understood meaning, we will assume that its meaning was intended by the legislature. *McNames v. Rockford Park District*, 185 Ill. App. 3d 291, 294 (1989). The construction of a statute is an issue of law, and our review is *de novo. Boaden*, 171 Ill. 2d at 237.

Our analysis of the statute hinges on the meaning of the terms "sidewalk" and "abutting." Webster's Dictionary defines "sidewalk" as "a walk for foot passengers usu[ally] at the side of a street or roadway: a foot pavement." Webster's Third New International Dictionary 2113 (1986). While plaintiff's reading of the Act limits the word "sidewalk" to include only "public sidewalks," the plain language of the statute does not support that interpretation. See *Arenson v. Department of Revenue*, 279 Ill. App. 3d 355, 358-59 (1996) (if statutory language is clear, we may not read into the statute exceptions, conditions, or limitations that the legislature did not express). As stated above, the public policy of the Act is to encourage owners and occupiers of residential units to clean snow and ice off of the sidewalks abutting their residences. We note that it is common for a residence to have a paved walkway or "sidewalk" that leads from a driveway and/or a public sidewalk to the residence. The word "sidewalk," taken in its ordinary meaning, encompasses all of these "foot pavements" leading to and from the residence. Absent a distinction drawn by the legislature that limits the term "sidewalk" to only public or municipal sidewalks, we must afford "sidewalk" its plain and ordinary meaning. See *Town of Benton v. City of Zion*, 195 Ill. App. 3d 71, 76 (1990) (we must consider a statute in its entirety and note the subject that it addresses and the legislature's apparent objective in enacting it).

We note that *Yu v. Kobayashi*, 281 Ill. App. 3d 489 (1996), the only case to address the meaning of "sidewalk" under the Act, reached the same conclusion. In *Yu*, this court held that a tenant's slip and fall on a snow pile outside her apartment occurred on a "sidewalk." There, the plaintiff alleged that the defendants' negligent snow removal created an unnatural accumulation of snow, proximately causing severe injuries when the plaintiff fell. *Yu*, 281 Ill. App. 3d at 490. As in this case, the plaintiff in *Yu* asserted that the Act did not apply because the accident scene was neither the municipal sidewalk, which was 75 to 100 feet from the building, nor part of any sidewalk adjacent to the building. *Yu*, 281 Ill. App. 3d at 491. Rather, the plaintiff argued that the paved area between the door to the apartment building and the parking lot was, at most, part "sidewalk" and part "stoop." *Yu*, 281 Ill. App. 3d at 491. Because it was disputed whether the scene of the injury was the stoop or the sidewalk, the plaintiff argued that the statute did not apply. *Yu*, 281 Ill. App. 3d at 491. This court affirmed the trial court's decision that, whether the plaintiff fell on the stoop or on the paved area between the stoop and parking lot, she fell on a "sidewalk." *Yu*, 281 Ill. App. 3d at 493. In particular, we stated:

"[C]ommon sense dictates that, if part of the paved area between the stoop and the parking lot is the sidewalk, all of the paved strip is the sidewalk. Any distinction here between the stoop and the rest of the sidewalk is arbitrary. They are parts of the same continuous walkway. Pedestrians traverse both in quick succession to get from the building to the parking lot or vice-versa. Also, both are made of the same material and the difference in elevation is slight. Together, they form a paved path set aside primarily for pedestrians. Even if the path is not a 'sidewalk' in the traditional sense of a paved area that is part of a municipal street [citation], it is sufficiently akin to a traditional sidewalk that to classify it otherwise would be unreasonable." *Yu*, 281 Ill. App. 3d at 493.

Plaintiff also asserts that, because the paved walkway in this case is located within the property rather than at the border of the property, it does not "abut" defendant's property. Plaintiff points out that the term "abut" is defined in Black's Law Dictionary as "[t]o join at a border or boundary; to share a common boundary with." Black's Law Dictionary 10 (7th ed. 1999). In addition, we note that Webster's Dictionary defines "abut" as "to border on: reach or touch with an end." Webster's Third New International Dictionary 8 (1986). Contrary to plaintiff's assertion, neither section 1 nor section 2 requires that the "sidewalk" be located on the border of the property.

 Section 1 sets forth the public policy that "owners and others residing in residential units be encouraged to clean the sidewalks

*abutting their residences* of snow and ice." (Emphasis added.) 745 ILCS 75/1 (West 2000). As a result, the Act applies to any sidewalk that "borders," "shares a common boundary with," or "touches" a residence. A residence is a "house or other fixed abode." Black's Law Dictionary 1310 (7th ed. 1999). As the paved walkway in this case clearly borders or touches defendant's residence, it "abuts" the residence as contemplated by the Act. Section 2, which imposes liability for willful and wanton conduct, states that any owner or person "in charge of any *residential property* *** who removes or attempts to remove snow or ice from sidewalks *abutting the property* shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk." (Emphasis added.) 745 ILCS 75/2 (West 2000). The second use of the word "property" in section 2 refers to "residential property," which, as we have stated, includes a house or other fixed dwelling. Accordingly, when reading sections 1 and 2 together (see *People v. Patterson*, 308 Ill. App. 3d 943, 947 (1999) (the legislature's intent can be determined by looking at the language of the statute and construing each section of the statute together as a whole)), it is clear that "property" encompasses both the residence and the surrounding land. Thus, the Act applies to any "sidewalk" that "abuts" a "residence" or "property," not just a sidewalk that borders the property. For these reasons, the paved walkway at issue is a "sidewalk abutting the property" within the meaning of the Act. Because the Act bars plaintiff's negligence claim, the trial court properly awarded summary judgment in favor of defendant as to count I of plaintiff's first amended complaint.

## B. Willful and Wanton Count

We consider next whether it was proper for the trial court to grant summary judgment in favor of defendant as to count II, alleging willful and wanton conduct. Summary judgment is a drastic means of disposing of litigation and should be utilized only when the moving party's right to it is clear and free from doubt. *Castaneda v. Community Unit School District No. 200*, 268 Ill. App. 3d 99, 102 (1994). However, summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. *Robidoux*, 201 Ill. 2d at 335. "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a

factual basis that would arguably entitle the party to a judgment." *Robidoux*, 201 Ill. 2d at 335. We review *de novo* a trial court's ruling on a motion for summary judgment. *Castaneda*, 268 Ill. App. 3d at 102.

"This court and the legislature have defined willful and wanton conduct as a course of action which shows actual or deliberate intent to harm or which, if the course of action is not intentional, shows an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." *Pfister v. Shusta*, 167 Ill. 2d 417, 421 (1995). Willful and wanton conduct is a hybrid between negligent acts and intentionally tortious behavior. *Pfister*, 167 Ill. 2d at 422. " 'Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing.' " *Poole v. City of Rolling Meadows*, 167 Ill. 2d 41, 47 (1995), quoting *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76 (1994).

■ To plead a cause of action for willful and wanton conduct, the plaintiff must allege the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff. *Kirwan v. Lincolnshire-Riverwoods Fire Protection District*, 349 Ill. App. 3d 150, 155-56 (2004). A defendant's "utter indifference" or "conscious disregard" for the safety of others may be inferred from the outrageous nature of the conduct. *Kirwan*, 349 Ill. App. 3d at 156. Two examples of conduct from which "reckless disregard" for the safety of others can be inferred are (1) failure, after knowledge of impending danger, to exercise ordinary care to prevent it and (2) failure to discover a danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. *Kirwan*, 349 Ill. App. 3d at 156. Whether conduct is willful and wanton requires close scrutiny of the facts as disclosed by the evidence. *Kirwan*, 349 Ill. App. 3d at 156.

While the question of willful and wanton conduct is a question of fact for the jury to resolve, the court must first determine if the plaintiff has presented enough factual evidence to present the issue to the jury. *Trotter v. School District 218*, 315 Ill. App. 3d 1, 19 (2000). If the plaintiff has failed to produce any evidence of such conduct, then the court should find as a matter of law that the defendant's conduct was not willful and wanton. *Trotter*, 315 Ill. App. 3d at 19; see also *Chiczewski v. Emergency Telephone System Board*, 295 Ill. App. 3d 605, 609 (1997) (if the plaintiffs have failed to produce any evidence

that the defendant's actions amounted to willful and wanton conduct, then the motion for summary judgment must be granted).

■ According to plaintiff, he alleged facts sufficient to show that defendant knew about the dangerous condition of the walkway and failed to exercise ordinary care. Plaintiff asserts that the deposition testimony reveals that (1) Glab saw snow melting on the roof overhang above the stoop; (2) Ronald saw snow melting on the roof and dripping over the top of the gutter; (3) one week before plaintiff fell, Simpson stepped off the stoop and slipped and fell on a patch of ice on the walkway directly below where water was dripping from the roof overhang; (4) Simpson went back inside the house and told Glab about his fall; (5) Glab warned defendant that there was a drip from the overhang before plaintiff's fall; (6) Glab warned defendant about the drip because she was concerned about the water freezing; (7) Glab told defendant to put more salt on the walkway and stoop because they were icy; and (8) defendant testified that there were patches of ice on the walkway on the night of plaintiff's fall. Defendant counters that plaintiff cannot show that he fell on ice, much less an unnatural accumulation of snow or ice. Defendant further asserts that, even if an unnatural accumulation caused plaintiff's fall, plaintiff cannot show willful and wanton conduct. We agree.

Viewing the facts in the light most favorable to plaintiff, plaintiff has failed to produce any evidence of willful and wanton conduct. In this case, the evidence is clear that, prior to plaintiff's fall, the walkway and stoop had been shoveled and ice melt had been applied. Specifically, Cornwell remembered clearing the walkway and applying ice melt after it snowed a few days to a week prior to plaintiff's fall. Plaintiff acknowledged that ice melt had been applied to the area where he fell, as it appeared on his hand and clothing after he got up. Plaintiff also admitted that, after ringing the doorbell, he immediately turned to leave the stoop in order to avoid confronting defendant's husband. Although Simpson fell approximately one week before plaintiff fell, there is no evidence that defendant was aware of Simpson's fall, and Simpson and Glab sprinkled "calcium chloride" on the walkway directly after the incident occurred. When Simpson returned to defendant's house sometime during the week before plaintiff's fall, he confirmed that ice melt appeared on the walkway. In addition, as defendant points out, Glab and Ronald did not testify that water from the gutter was dripping onto the walkway. Instead, they indicated that there was dripping on the right corner of the stoop. According to Ronald, the frozen puddle was not in an area where people walked. Finally, there was no evidence that defendant's gutter system was defective, and roofing and gutter expert Halusek reported that

defendant's gutter would not have caused an unnatural accumulation of water or ice on the walkway or stoop underneath the gutter system.

In sum, we cannot say that defendant's actions with respect to the walkway amounted to utter indifference to or reckless disregard for the safety of plaintiff. Because the facts, when viewed in the light most favorable to plaintiff, are insufficient as a matter of law to constitute willful and wanton conduct, the trial court properly granted summary judgment in defendant's favor as to count II of plaintiff's second amended complaint.

## C. Amended Complaint

■ Having determined that defendant was entitled to summary judgment as to count II, alleging willful and wanton conduct, defendant's cross-appeal, arguing that the trial court abused its discretion by allowing plaintiff leave to amend his complaint, is moot. See *Fine Arts Distributors v. Hilton Hotel Corp.*, 89 Ill. App. 3d 881, 885 (1980) (in affirming the trial court's decision, defendants' cross-appeal is rendered moot and it is not necessary to consider the merits of that claim).

## III. CONCLUSION

For all of these reasons, the Du Page County circuit court's judgment is affirmed.

Affirmed.

CALLUM and GILLERAN JOHNSON, JJ., concur.