No. 1-17-0437

2018 IL App (1st) 170437

FOURTH DIVISION
June 14, 2018

No. 1-17-0437

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| RITA HUSSEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 15 L 876 |
| CHASE MANOR CONDOMINIUM | ) | |
| ASSOCIATION and CONNECTED PROPERTY | ) | |
| MANAGEMENT, LLC, | ) | Honorable |
| | ) | Kathy M. Flanagan |
| Defendants-Appellees, | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1    The question is whether an informal pathway behind a condominium building, through
and beyond a parking area to the rear entrance of the building, is a "sidewalk" under the Snow
and Ice Removal Act's immunity provision for the removal of snow or ice from a "sidewalk."
See 745 ILCS 75/2 (West 2012). We hold that it is not a sidewalk. We read the term "sidewalk"
as limited to the municipal right-of-way, the part of the public street reserved for pedestrian use
that abuts private residential property. We reverse the grant of summary judgment for defendants
and remand for further proceedings.

- 1 -

¶ 2 BACKGROUND

¶ 3 Plaintiff Rita Hussey slipped and fell on a patch of ice in the rear of her condominium building in Chicago. She sued the condo association, Chase Manor Condominium Association (Chase Manor), and the property-management company. Depending on how you interpret plaintiff's theory of recovery (a subject of dispute), plaintiff blames her fall on either negligent snow removal that created an unnatural, icy surface; a defect in the property—a slope in the pavement—that allowed an unnatural icy surface to form; or both.

¶ 4 The rear of the building, where the accident occurred, looks not very different from a standard alley in Chicago. There is a rear entrance to the condo building, which accesses some of the units but also the building's laundry room, basement, and utility room. Otherwise, the principal function of that rear area is to allow for the condo owners in the 14-unit building to park their cars.

¶ 5 The parking spaces, so to speak, are delineated by concrete parking blocks. Presumably due to space constraints, the cars do not all park in the same direction. Some parallel-park against the rear wall of the building (facing east-west). Others park perpendicular, in a north-south direction. Obviously, there is a middle space between the parallel-parked cars and the north-south parked cars—a space at least wide enough for a vehicle to travel to and from the various parking spaces.

¶ 6 That middle space is also wide enough, of course, for people to walk through. And unit owners sometimes did walk through that middle space, either to reach their cars or to access the building's rear entrance to do laundry or reach the basement. For some of the unit owners, including plaintiff, the easiest way to access the laundry facilities was not to travel within the

interior of the building but to walk outside, around to the back, through that parking area, to the rear entrance.

¶ 7    That middle space, between the cars parked parallel to the rear wall and the north-south parking spaces, is where plaintiff slipped and fell while walking to the laundry room. The condo association president referred to that area as a "driveway" in his deposition, as cars obviously drive through that area to and from their respective parking spaces. The person who shoveled the snow, who once lived in that building, considered this area part of the "parking lot." Plaintiff also calls it a "parking lot." So do defendants, though they hasten to add that it was a "parking lot" that was "used as a pathway" or a "walkway" or even a "common-area walkway" for residents to walk to the rear entrance. Indeed, plaintiff herself testified in her deposition that she was using that area as a "pathway" to the laundry room when she slipped and fell.

¶ 8    Whatever characterization may be used, it is undisputed that this area where the accident happened was part of the condo building's private parking area *and* an area sometimes used by unit owners as a walking path to the rear entrance. So without placing too much emphasis on the precise terminology, for ease of reference, we will refer to it as defendants prefer, as the "parking-lot pathway."

¶ 9    In that area behind the building, there is a slope from the edge of the building down across the parking-lot pathway and onto the flat surface where the north-south cars park. A day or two before March 15, 2014, after a heavy snowfall, the condo association directed the man they hired for snow removal to plow the snow in the rear of the building. He piled the snow up against the wall of the building. Plaintiff estimated that the pile of snow was about 5½ feet high. Given the downward slope of the rear area, this pile of snow against the building's wall was uphill of the parking-lot pathway.

¶ 10     On March 15, plaintiff was walking through the parking-lot pathway to use the laundry room through the rear entrance. She slipped on a patch of ice near one of the parking blocks next to the building. She broke her ankle and required two surgeries.

¶ 11     Plaintiff filed what ended up as a three-count complaint. She alleged negligence against Chase Manor and the management company and added a count against Chase Manor for the alleged negligence of its agent, Jason Jackson, the man Chase Manor hired to shovel the snow.

¶ 12     Plaintiff's theory, argued and supported by an expert's affidavit, is that the snow pile melted when the temperatures warmed; following gravity's course, the melted snow travelled downhill onto the parking-lot pathway; the temperatures dropped again, causing the water to re-freeze; and thus ice formed on the parking-lot pathway.

¶ 13     Defendants moved for summary judgment, arguing that the Snow and Ice Removal Act provided them immunity for "remov[ing] or attempt[ing] to remove snow or ice from sidewalks abutting the property." 745 ILCS 75/2 (West 2012). The trial court agreed with defendants that the parking-lot pathway was a "sidewalk" within the Act's meaning, entered summary judgment for defendants, and denied a motion for reconsideration.

¶ 14                                         ANALYSIS

¶ 15                                              I

¶ 16     Summary judgment is proper when the record reveals no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. The moving party's right to summary judgment must be clear and free from doubt. *Id.* We review *de novo* the trial court's grant of a motion for summary judgment, as well as legal questions such as the construction of a statute. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16.

¶ 17    This case concerns the application of the Snow and Ice Removal Act. The Act is in derogation of the common law—it immunizes certain conduct that, at the common law, would have subjected a defendant to liability. *Id.* ¶ 29. So before we decide what the Act immunizes and what it does not, we briefly review the common law as it existed before the Act, much as our supreme court recently did in *Murphy-Hylton*. See *id.* ¶¶ 19-23.

¶ 18    It was historically true at the common law that owners or possessors of land owed no duty to remove natural accumulations of snow and ice from their property. *Id.* ¶ 19. The reason is that Illinois can have harsh, unpredictable, and rapidly-changing winter weather, and it would thus be unreasonable to hold landowners to a duty of immediate and effective removal of snow and ice. *Id.*; see *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 748 (2005).

¶ 19    But *unnatural* accumulations of snow and ice were another story. Owners and possessors of land historically did owe a duty to prevent unnatural accumulations of snow and ice, provided they had notice of the dangerous condition. *Murphy-Hylton*, 2016 IL 120394, ¶ 20. That is, a defendant could be liable if the snow or ice accumulated " 'by artificial causes,' " in an " 'unnatural way,' " or " 'by defendant's own use of the area *** and creation of the condition.' " *Id.* (quoting *Fitzsimons v. National Tea Co.*, 29 Ill. App. 2d 306, 318 (1961)).

¶ 20    Generally speaking, liability for unnatural accumulations of snow or ice broke down into one of two theories of recovery. One of them was liability for a "defective condition" on the property, often stated as a defendant's "negligent maintenance" of the property for allowing that condition to exist. *Id.* ¶ 21. For example, certain building defects, such as improper gutters or an improperly pitched roof, could cause an unnatural accumulation of ice. See *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 238 (2004); *Murphy-Hylton*, 2016 IL 120394, ¶ 22 (citing *McLean* for this proposition).

¶ 21 The other theory of liability for the unnatural accumulation of snow or ice was the voluntary-undertaking theory, premised on the idea that owners or possessors of land who voluntarily undertake to remove natural accumulations of snow and ice must do so reasonably; if they do so negligently, they are liable for any resulting unnatural accumulation of that snow or ice. *Murphy-Hylton*, 2016 IL 120394, ¶ 22. One example, appropriate to our case, is the owner or possessor of the land piling snow in one area of a parking lot, whereupon it melts, spreads across the lot, and re-freezes, thus causing an unnatural sheet of ice across portions of the lot. See *Fitzsimons*, 29 Ill. App. 2d at 314; *Murphy-Hylton*, 2016 IL 120394, ¶ 22 (citing *Fitzsimons* as example of voluntary-undertaking case).

¶ 22 The Snow and Ice Removal Act was passed in 1979 (see Pub. Act 81-591 (eff. Sept. 14, 1979)) and provided the following immunity:

> "Any owner, lessor, occupant or other person in charge of any residential property, or any agent of or other person engaged by any such party, who removes or attempts to remove snow or ice from *sidewalks abutting the property* shall not be liable for any personal injuries allegedly caused by the snowy or icy condition of the sidewalk resulting from his or her acts or omissions unless the alleged misconduct was willful or wanton." (Emphasis added.) 745 ILCS 75/2 (West 2012).[1]

¶ 23 The supreme court recently addressed a question that had divided the appellate courts: While the Act clearly immunized landowners who voluntarily undertook to "remove snow or ice" (*id.*), did the Act also immunize landowners for defective conditions on the property that caused unnatural accumulations of snow?

---

[1]When we discuss "immunity" under the Act, we mean immunity for negligent acts, the only acts alleged in this case. The Act does not immunize willful and wanton conduct. 745 ILCS 75/2 (West 2012).

¶ 24    In *Murphy-Hylton*, 2016 IL 120394, ¶ 29, the supreme court held that the Act did *not* abrogate common-law claims of a defective condition on the property that causes an unnatural accumulation of snow or ice. The supreme court emphasized that statutes in derogation of the common law must be strictly construed so as not to inadvertently abrogate existing common-law causes of action. *Id.* Thus, while the Act clearly abrogated the common-law claim of voluntary undertaking, the Act did not contain language that clearly abrogated the property-defect claim of the common law, and the supreme court would not read such language into it. *Id.*

¶ 25    "In keeping with our rules of statutory construction," the court wrote, "we cannot construe a statute that is in derogation of the common law 'beyond what the words of the statute express[ ] or beyond what is necessarily implied from what is expressed.' " *Id.* (quoting *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004)). A statute repealing common-law claims should be limited to its " 'express language, in order to effect the least—rather than the most— change in the common law.' " *Id.* (quoting *Adams*, 211 Ill. 2d at 69-70). A broad reading would have the effect of repealing common-law claims by implication, which Illinois disfavors. *Id.*

¶ 26    Though the direct holding of *Murphy-Hylton* does not govern this case, this recent decision serves as a cautionary note about an overly broad interpretation of the Act. With that in mind, we turn to our question.

¶ 27                                        II

¶ 28    The question is what section 2 of the Act means when it immunizes snow-removal efforts on "sidewalks abutting the property" of a residential landowner. 745 ILCS 75/2 (West 2012).

¶ 29    The parties cite five appellate decisions that have addressed whether a certain piece of property was a "sidewalk" under the Act. Three of them involved paved walkways on private

property leading to a residence, while two of them concerned private driveways. All of them, in various ways, are analogous to the facts before us. We will start with the "driveway" cases.

¶ 30                                                    A

¶ 31    Defendant cites a decision from the First District of our appellate court, on which the trial court also relied, that held that a driveway constituted a "sidewalk" under the Act. In *Flight v. American Community Management, Inc.*, 384 Ill. App. 3d 540, 541 (2008), the plaintiff slipped and fell on ice while walking on the driveway to his condominium unit. The trial court granted summary judgment to the defendants based on the Act, ruling that the driveway was a "sidewalk" because the plaintiff was walking on it when he fell. The appellate court affirmed on a different basis—namely, that there was nothing in the record showing any *unnatural* accumulation of ice on the driveway surface on which plaintiff allegedly fell. *Id.* at 544-45. Because there was no common-law duty to remove natural accumulations of snow or ice and the record did not support an inference that the ice there was anything but natural, summary judgment was proper on that alternative ground. *Id.*

¶ 32    Given this conclusion, the court chose to "address only briefly plaintiff's contention that the Act was improperly applied." *Id.* at 544. In doing so, the court held that, because the plaintiff was walking on the driveway toward his unit, the driveway "was sufficiently akin to a sidewalk such that the application of the Act was proper." *Id.* at 545. The court then wrote that it "need not reach plaintiff's related contention that the Act is in derogation of the common law." *Id.*

¶ 33    Later, a decision of the Second District of this court reached the opposite conclusion and criticized the holding in *Flight*. In *Gallagher v. Union Square Condominium Homeowner's Ass'n*, 397 Ill. App. 3d 1037 (2010), the court held that a condominium driveway was not a "sidewalk" within the meaning of the Act. There, the condo association's contractor had "plowed

a single, narrow path up the middle of plaintiff's driveway, causing the unnatural formation of a snow mound in front of plaintiff's garage door, which impeded plaintiff's access to the garage by foot or car." *Id.* at 1039. It also caused unnatural snow mounds on each side of the path, as well as the unnatural formation of a sheet of ice, obscured by freshly fallen snow. *Id.* Unable to park his vehicle in the garage, the plaintiff parked on the street and walked along the narrow, shoveled path toward the garage, at which point he slipped and fell, sustaining injuries. *Id.*

¶ 34    The appellate court held that the Act did not immunize the removal of snow on driveways. *Id.* at 1042. A "sidewalk," it reasoned, is "generally understood to be a 'walk for foot passengers usu[ally] at the side of a street or roadway; a foot pavement.' " *Id.* (quoting Webster's Third New International Dictionary 2113 (1986)). But a driveway "is commonly understood to be a surface on which one drives motor vehicles from a street to a private building—'a private road giving access from a public thoroughfare to a building or buildings on abutting grounds.' " *Id.* (quoting Webster's Third New International Dictionary 692 (1986)).

¶ 35    The court criticized the *Flight* decision, writing that *Flight* did not engage in a strict construction of the Act, as required for statutes in derogation of the common law. *Id.* at 1045. Indeed, the court complained, the court in *Flight* "did not engage in any statutory interpretation, apply any of the well-recognized principles of statutory construction, or examine the plain language of the Act." *Id.* The court also criticized *Flight*'s reasoning that the driveway there was "sufficiently akin" to a sidewalk because the plaintiff had been walking on it when he fell; by that rationale, "we would be forced to consider any paved surface on which a plaintiff might walk, whether on a regular basis or only once, a sidewalk under the Act." *Id.* at 1046.

¶ 36    *Gallagher* provides the more comprehensive and proper analysis. *Flight*, by its own admission, only "briefly" addressed the statutory question (*Flight*, 384 Ill. App. 3d at 544), did

not include that statutory analysis in the summary of its holding at the end because it was unnecessary to its holding (*id.* at 545), and explicitly did *not* reach the argument that the statute, in derogation of the common law, should be narrowly construed (*id.*)—which should have been an indispensable part of any statutory analysis of the Act. See *Murphy-Hylton*, 2016 IL 120394, ¶ 29. As *Gallagher* held, reading the term "sidewalk" as including the term "driveway" would be a liberal, not strict, construction of a statute in derogation of the common law.

¶ 37    Of course, we are not dealing here with a driveway. The parties agree that the area where the accident occurred was part of the parking area. A parking area, that is, through which unit owners routinely walked to reach the rear entrance of the building, as plaintiff was doing. Does that additional fact make a difference?

¶ 38     We don't see how it could. People walk in every parking lot. Sometimes by necessity—to get from their parked car to their destination. And sometimes by choice—because it is the most direct route from one point to another, even if no car is involved at all (as here, with plaintiff). It is impossible to completely separate walking on foot from a parking lot. If the mere fact that people walked through this parking area made it a "sidewalk," then every residential parking lot in the state of Illinois would be a "sidewalk."

¶ 39    That would be a dubious proposition in and of itself. Just as driveways are predominantly defined by vehicular travel (see *Gallagher*, 397 Ill. App. 3d at 1042), so too are parking areas understood as involving a vehicle—for without one, there is nothing to "park."

¶ 40    But consider further our mandate to narrowly construe statutes in derogation of the common law. *Murphy-Hylton*, 2016 IL 120394, ¶ 29. The result becomes clearer still. If we read the phrase "parking lot" into "sidewalk," we would be engaging in a liberal, not strict construction of the words. Without the General Assembly having ever mentioned the phrase

"parking lot"—which it easily could have done—we would be eliminating a common-law remedy for negligent snow removal in parking lots by implication, which is disfavored. See *id.* We would be doing exactly what *Murphy-Hylton* directs us *not* to do: expanding immunity under the statute beyond the express language of the statute and effecting the most—rather than the least—change in the law. *Id.*; see *Adams*, 211 Ill. 2d at 69-70.

¶ 41    We cannot read the word "sidewalk" under the Act as including a condo building's parking lot.

¶ 42                                              B

¶ 43    Defendants insist that the Second District's decision in *Gallagher* is distinguishable. They argue that three earlier appellate decisions interpreted the word "sidewalk" under the Act under circumstances more analogous to this case—involving private walkways leading from a parking lot or driveway to the entrance of a residence. That, to be fair, is a reasonable description of the property in question here. So we next consider these three cases cited by defendant and the trial court.

¶ 44    In *Yu v. Kobayashi*, 281 Ill. App. 3d 489, 493 (1996), the court held that a paved area leading from an apartment building to the parking lot, including the stoop on which plaintiff slipped and fell, was a "sidewalk" under the Act. The complaint in that case, at times, referred to the walkway between the parking lot and front entrance as a "sidewalk." *Id.* at 491-92. The predominant dispute between the parties was *not* whether the walkway, as a whole, was a "sidewalk," but whether the stoop—the front porch where plaintiff slipped—was part of that same walkway. The trial court ruled that, "whether [plaintiff] fell on the stoop or the paved area between the stoop and the parking lot, she fell on the 'sidewalk.' " *Id.* at 493.

¶ 45    The appellate court agreed, reasoning as follows:

"Not only does count IV of the amended complaint itself specifically allege that the accident took place on an improperly plowed sidewalk, but we believe it is undeniable that the scene of the accident was a 'sidewalk' as the Act employs that term. As defendants argue, common sense dictates that, if part of the paved area between the stoop and the parking lot is the sidewalk, all of the paved strip is the sidewalk. Any distinction here between the stoop and the rest of the sidewalk is arbitrary. They are parts of the same continuous walkway. Pedestrians traverse both in quick succession to get from the building to the parking lot or vice-versa. Also, both are made of the same material and the difference in elevation is slight. Together, they form a paved path set aside primarily for pedestrians. Even if the path is not a 'sidewalk' in the traditional sense of a paved area that is part of a municipal street (see *City of Elmhurst v. Buettgen*, 394 Ill. 248, 252-53 (1946)), it is sufficiently akin to a traditional sidewalk that to classify it otherwise would be unreasonable." *Yu*, 281 Ill. App. 3d at 493.

¶ 46 This court next had occasion to determine the meaning of a "sidewalk abutting the property" of a residential landowner in *Kurczak v. Cornwell*, 359 Ill. App. 3d 1051 (2005). The plaintiff was injured when he slipped and fell on a paved walkway leading from the driveway to the front porch of the defendant's residence. *Id.* at 1052. The plaintiff argued that the walkway (1) was not a "sidewalk" and (2) did not "abut the property." *Id.* at 1056. This court rejected both arguments, relying in part on the *Yu* decision.

¶ 47 The court noted that Webster's Dictionary defined "sidewalk" as " 'a walk for foot passengers usu[ally] at the side of a street or roadway: a foot pavement.' " *Id.* at 1057 (quoting Webster's Third New International Dictionary 2113 (1986)). The court reasoned that the word "sidewalk" encompassed all of the "foot pavements" leading to and from the residence. *Id.* The

court rejected the plaintiff's contention that the word "sidewalk" as used in the Act included only public sidewalks: "Absent a distinction drawn by the legislature that limits the term 'sidewalk' to only public or municipal sidewalks, we must afford 'sidewalk' its plain and ordinary meaning." *Id.*

¶ 48 The court also rejected the plaintiff's argument that the paved walkway did not "abut" defendant's property because it was located *within*, rather than at the border of, the property. *Id.* at 1058. The court noted that, while section 2's immunity provision referenced " 'sidewalks *abutting the property*,' " section 1 of the Act—the statement of legislative intent—discussed encouraging residents to clear snow and ice from the " 'sidewalks *abutting their residences*.' " (Emphases in original.) *Id.* at 1058-59 (quoting 745 ILCS 75/1, 2 (West 2000)). The court noted that "[a] residence is a 'house or other fixed abode.' " *Id.* at 1059 (quoting Black's Law Dictionary 1310 (7th. ed. 1999)). Reading the two sections together, the court decided that " 'property' encompasses both the residence and the surrounding land." *Id.* It followed that "the Act applies to any 'sidewalk' that 'abuts' a 'residence' or 'property,' not just a sidewalk that borders the property." *Id.* Thus, the court concluded, "the paved walkway at issue [was] a 'sidewalk abutting the property' " within the meaning of the Act. *Id.*

¶ 49 Finally, in *Bremer v. Leisure Acres-Phase II Housing Corp*., 363 Ill. App. 3d 581 (2006), the plaintiff slipped and fell on ice as she was walking on a concrete walkway that was entirely within the property lines of the apartment complex and which connected her apartment to the defendants' parking lot. *Id.* at 582. The court cited the same dictionary definition of "sidewalk" that was cited by the court in *Kurczak*. *Id.* at 584. Citing *Yu*, the court reasoned:

"The walkway in this case is a path that leads from the parking lot to the residence. It is a concrete walk for foot passengers. It is, in ordinary terms, a sidewalk. [Citation.] Absent

a clear distinction that limits the term 'sidewalk,' we must afford the word its plain and ordinary meaning." *Id.*

¶ 50     The court also agreed with *Kurczak* that the word "abutting" did not mean that the sidewalk had to touch only the border of the residential property. *Id.* at 584-85. Employing the same analysis as in *Kurczak*, the court reasoned that the Act's statement of legislative intent in section 1, which encouraged landowners to remove snow from sidewalks " 'abutting their residences,' " had to be harmonized with the language in section 2 that immunized snow shoveling on " sidewalks 'abutting the property' " of residential landowners. (Emphases omitted.) *Id.* (quoting 745 ILCS 75/1, 2 (West 2002)). Reading them together, section 1's reference to "residences" modified section 2's reference to "property," and thus, any walkway that touched the border of the property, *or* the house itself, was a "sidewalk abutting the property" of a residential landowner under the Act. *Id.*

¶ 51     These three cases, together, stand for the proposition that the Act provides immunity for the removal of snow or ice on any private walkway on residential property that either touches the border of the property or that touches the house on the property.

¶ 52     We cannot reconcile this line of case law with the more recent appellate decision in *Gallagher* or, more importantly, with the even more recent supreme court decision in *Murphy-Hylton*. We reach this conclusion for several reasons.

¶ 53     First, none of these three cases even mentioned what is probably the most important aspect of any analysis of a statute that is in derogation of the common law—the need to interpret it strictly, to avoid eliminating by implication a body of common-law claims. *Murphy-Hylton*, 2016 IL 120394, ¶ 29; *Gallagher*, 397 Ill. App. 3d at 1043. None of these cases cited that

principle or mentioned the fact that the more liberally they interpreted the immunity provision, the more common-law claims they foreclosed by judicial implication.

¶ 54    None of them *applied* that principle of strict construction, either. If anything, these courts gave an expansive definition to the term "sidewalk." The court in *Yu*, 281 Ill. App. 3d at 493, as discussed, devoted most of its analysis to whether the front porch (where the plaintiff fell) was part of the same path as the concrete walkway leading to the parking lot, presupposing that the walkway was a "sidewalk" in doing so. It was only at the end of the discussion that the court added, without any analysis: "Even if the path is not a 'sidewalk' in the traditional sense of a paved area that is part of a municipal street (see *City of Elmhurst v. Buettgen*, 394 Ill. 248, 252-53 (1946)), it is sufficiently akin to a traditional sidewalk that to classify it otherwise would be unreasonable." *Id.*

¶ 55    Suffice it to say that a narrow, strict construction of the term "sidewalk" would not include something that is *not* a sidewalk, but fairly resembles one. That interpretation is more liberal still, given that the court specifically cited a supreme court decision that defined the term "sidewalk" (albeit in a different statute) as "part of the street which the municipal authorities have set apart for the use of pedestrians" (*Buettgen*, 394 Ill. at 252)—but then proceeded to ignore it, because doing so would be "unreasonable." *Yu*, 281 Ill. App. 3d at 493.

¶ 56    The courts in *Kurczak* and *Bremer* did not strictly construe the term, either. The court in *Kurczak*, 359 Ill. App. 3d at 1057, reasoned that it would construe the term "sidewalk" in the Act to include a private walkway running from a residence to a parking area "[a]bsent a distinction drawn by the legislature that limits the term 'sidewalk' to only public or municipal sidewalks." See also *Bremer*, 363 Ill. App. 3d at 584 (court would construe "sidewalk" under Act as including private walkway "[a]bsent a clear distinction that limits the term").

¶ 57 In the context of a statute in derogation of the common law that requires strict construction, that reasoning is backwards. The court's role in that context is not to broadly interpret a provision absent some clear textual limitation; it is to effect the least amount of change to the common law by limiting its construction to what the statute expressly provides and what it necessarily implies. *Murphy-Hylton*, 2016 IL 120394, ¶ 29; *Adams*, 211 Ill. 2d at 69.

¶ 58 Another quarrel with these three appellate decisions is their discussion of the word "abutting" that modifies "sidewalk" in the Act. Recall that the Act immunizes snow-removal efforts on "sidewalks abutting the property" of residential landowners. 745 ILCS 75/2 (West 2012). While *Yu* did not discuss the issue, the unsuccessful plaintiffs in *Kurczak* and *Bremer* argued that the General Assembly must have been referring to municipal sidewalks in this language, because they always "abut"—that is, rest along the border of—private residential property, whereas other private walkways do not border residential property but are, in fact, part of the residential property.

¶ 59 Those courts rejected that reasoning by examining section 2 in light of section 1 of the Act, the statement of legislative intent, which uses different language. The General Assembly said in section 1 that it was the public policy of the State that residential landowners "be encouraged to clean the sidewalks abutting their *residences* of snow and ice." (Emphasis added.) 745 ILCS 75/1 (West 2012). Because the word "residence" includes the physical abode specifically, these courts reasoned that, when the legislature provided the grant of immunity in section 2 for snow removal on sidewalks "abutting the property," it meant to include the physical home. *Kurczak*, 359 Ill. App. 3d at 1058-59; *Bremer*, 363 Ill. App. 3d at 584-85. Accordingly, private walkways, though they do not "border" or "abut" the residential property, will constitute

"sidewalks" under the Act so long as they "border" or "abut" the *house*. *Kurczak*, 359 Ill. App. 3d at 1058-59; *Bremer*, 363 Ill. App. 3d at 584-85.

¶ 60    We cannot agree with this reasoning, because again, it is not a strict construction of the phrase "sidewalk abutting the property" of a residential landowner. The word "abut" means " 'to join at a border or boundary; to share a common boundary with' " or " 'to border on: reach or touch with an end.' " *Kurczak*, 359 Ill. App. 3d at 1058 (quoting Black's Law Dictionary 10 (7th ed. 1999), and Webster's Third New International Dictionary 8 (1986)). Section 2, the operative immunity statute, refers to sidewalks bordering the property. It does not refer to sidewalks bordering the *house*, which is a far broader reading of the Act that permits the inclusion of all sorts of private walkways leading from the house, not to mention front and back porches. And under no circumstances could those private walkways and porches be considered to be "abutting" the residential property—they *are* residential property.

¶ 61    Recognizing the spirit and purpose of a statute is always important in considering the operative language of the statute. But the court goes too far if it allows a general statement of legislative intent to materially expand the language of a specific grant of immunity in the statute—especially if that grant of immunity is to be read strictly. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) (specific statutory provision controls over general provision on same subject). The grant of immunity in section 2, and nothing else, is the source of relief for defendants. Had the General Assembly wished to include within its immunity walkways that abut the house itself, it could have easily used that same language that it used more generically in section 1. It did not.

¶ 62    These specific criticisms aside, on a more fundamental level, these three cases simply did not accurately identify the plain meaning of the term "sidewalk" under the Act. As we explain

below, a strict reading of the term "sidewalk" can only lead to the conclusion that the General

Assembly was referring in the Act to a municipal sidewalk, the *public* right-of-way reserved for

pedestrians, bordering the property of a residential landowner.

¶ 63                                                    C

¶ 64     Though colloquially, one might use the word "sidewalk" to refer to a paved walkway on

private property leading to a house, the General Assembly has always referred to a "sidewalk" as

a term of art, and so have the courts interpreting that word—other than in the context of the

Snow and Ice Removal Act, as discussed above.

¶ 65     Under the Illinois Vehicle Code, for example, "sidewalk" is defined as "[t]hat portion of

a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines,

intended for use of pedestrians." 625 ILCS 5/1-188 (West 2012). And a "street" is "[t]he entire

width between boundary lines of every way publicly maintained, when any part thereof is open

to the use of the public for purposes of vehicular travel." 625 ILCS 5/1-201 (West 2012). In

other words, a "sidewalk" is part of the street—part of the *publicly* maintained right of way,

adjacent to private property, that is intended for pedestrian use.

¶ 66     That definition is consistent with a long line of supreme court decisions holding that a

sidewalk is not private property, but rather "is considered a part of the street which has been set

aside for pedestrian use." *City of Carbondale v. Brewster*, 78 Ill. 2d 111, 116 (1979); see also

*Lansing v. County of McLean*, 69 Ill. 2d 562, 572 (1978) (" 'The sidewalk is simply a part of the

street which the municipal authorities have set apart for the use of pedestrians.' " (quoting

*Buettgen*, 394 Ill. at 252)); *People ex rel. Herman Armanetti, Inc. v. City of Chicago*, 415 Ill.

165, 167 (1953) (" 'Sidewalks' have been held to be public ways within the meaning of the word

'streets.' "); *Topliff v. City of Chicago*, 196 Ill. 215, 217-18 (1902) (noting that city has "ample

power to designate portions of the streets of the city to be used by horsemen and vehicles and other portions to be used by pedestrians," the latter of which "are not improperly known as the sidewalks").

¶ 67    As an appellate decision from 1965 put it:

"[T]he basic purpose of having streets and sidewalks within a municipality is to afford a public way for pedestrian and vehicular traffic. The public is rightfully entitled to the use of such thoroughfares free of all obstructions and impediments which tend to delay or obstruct traffic. [Citation.] An abutting property owner, for his convenience, has a right to make proper and reasonable use of the sidewalk and street, but only to the extent that such use is not inconsistent with the paramount right of the public." *Sabath v. City of Chicago*, 56 Ill. App. 2d 307, 319 (1965).

¶ 68    A section of the Local Governmental and Governmental Employees Tort Immunity Act provides immunity "for an injury caused by the effect of weather conditions as such on the use of streets, highways, alleys, *sidewalks or other public ways, or places*." (Emphasis added.) 745 ILCS 10/3-105(a) (West 2012). As its title implies, that statute does not protect anything but *public* entities, for injuries occurring on government-controlled—that is, public—property. See *id.* § 3-101 (defining "public property"); *Steinbach v. CSX Transportation, Inc.*, 393 Ill. App. 3d 490, 517 (2009). This law has been on the books since 1965, following the abolition of sovereign immunity, "to protect local public entities *** from liability arising from the operation of government." *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 505 (2006).

¶ 69    In a similar vein, nearly 90 years ago in *Graham v. City of Chicago*, 346 Ill. 638, 641 (1931), the supreme court considered the question of "[w]hat, if any, duty devolves upon a city to remove ice from its sidewalks." under the common law. The court answered it:

"[T]here is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of *its* streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. [Citations.] A municipality is bound only to use reasonable care to keep *its* sidewalks reasonably safe for the amount and kind of travel which may fairly be expected upon them." (Emphases added.) *Id.*

¶ 70    The tort-immunity statute and *Graham* decision are unquestionably premised on the nature of a "sidewalk" as a public right-of-way controlled by the municipality.

¶ 71    Similarly, the Revised Cities and Villages Act, for decades, has permitted cities and villages to regulate "sidewalks." See Ill. Rev. Stat. 1945, ch. 24, ¶ 23-20. A 1924 Elmhurst ordinance, promulgated by authority of that law, prohibited vehicles from driving over "sidewalks." See *Buettgen*, 394 Ill. at 250. The defendant, convicted of driving his car over the sidewalk onto his driveway, argued that the sidewalk, at least insofar as it intersected his driveway, was part of his private driveway—it was private, not public property—and thus the state law did not vest the municipality with the authority to regulate that private property.

¶ 72    The supreme court found it "absurd" to interpret "sidewalk" to include private property. *Id.* at 252. Rather, the court wrote, "[t]he sidewalk is simply a part of the street which the municipal authorities have set apart for the use of pedestrians." *Id.* The court elaborated:

"There can be no question but that the title to all streets and sidewalks is vested in the city in trust for the public, and under the above provisions of the Cities and Villages Act they are under the control, supervision and dominion of the corporate authorities of the city for the purpose of preserving them and promoting their intended use. The city is charged

with the duty of keeping its sidewalks, as well as its streets, in a reasonably safe condition for the use of the public." *Id.*

¶ 73    But most notably of all, the Illinois Municipal Code grants each municipality the right to "regulate the use of sidewalks" and to "require the owner or occupant of any premises to keep the *sidewalks abutting the premises* free from snow and other obstructions." (Emphasis added.) 65 ILCS 5/11-80-13 (West 2012). This provision had been codified in its present form, unchanged, since 1963, long before the Snow and Ice Removal Act's enactment in 1979.

¶ 74    The supreme court upheld a municipal ordinance adopted pursuant to this section of the Municipal Code in *Brewster*, 78 Ill. 2d at 116. The court held that the state, and by delegation a city, possessed the police power to require residents to clear snow from the "sidewalks" in front of their homes, even though the "sidewalk" was public property, not owned by the private landowner. *Id.* In so holding, the court overruled its 1884 decision in *City of Chicago v. O'Brien*, 111 Ill. 532, 537 (1884), which held that a private landowner could *not* be required to clear the snow from the "sidewalk" fronting the landowner's private property, as doing so would impose a "purely public burden" on a private landowner without just compensation or some special taxation to compensate the private landowner for cleaning that public right-of-way.

¶ 75    The court in *Brewster*, noting a general change over the previous century in the understanding of the government's police power, disagreed with *O'Brien*'s holding, but certainly not its premise—that sidewalks are public property, controlled by municipalities. Indeed, the court in *Brewster* noted a long line of cases holding "that the sidewalk is considered a part of the street which has been set aside for pedestrian use." *Brewster*, 78 Ill. 2d at 116.

¶ 76    Thus, since at least 1884, our supreme court has made it abundantly clear that a "sidewalk" is public property and has interpreted that word as a statutory term accordingly.

¶ 77    It was against this backdrop, following decades if not centuries of statutory law and supreme court case law giving one and only meaning to the word "sidewalk," that the General Assembly enacted the Snow and Ice Removal Act in 1979. We simply cannot accept that when the General Assembly enacted the Act, it intended the word "sidewalk" to mean something materially different than what it had meant in every other statute and inconsistent with a slew of supreme court decisions interpreting that word. And to put it mildly, any attempt to divine some unprecedented distinction would not be an exercise in narrowly and strictly construing the Act.

¶ 78    We recognize that "[c]are must be taken when importing the definition of a term from one statute to another, since 'the context in which a term is used obviously bears upon its intended meaning.' " *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 22 (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 29). But we do not think the term "sidewalk" is being used in a different context under the Act than in the other statutes we have cited—certainly not in a different context than the provision in the Municipal Code that allows municipalities to "require the owner or occupant of any premises to keep the sidewalks abutting the premises free from snow and other obstructions." 65 ILCS 5/11-80-13 (West 2012). If "sidewalks abutting the premises" (*id.*) means a public right-of-way under the Municipal Code, we cannot fathom that the General Assembly meant "sidewalks abutting the property" to mean something different under the Snow and Ice Removal Act. 745 ILCS 75/2 (West 2012).

¶ 79    Our interpretation fits comfortably into the Act's language, for a municipal sidewalk always "abut[s] the property" of the residential landowner. We need not import a word from the legislative-intent section of the Act to make the word "property" include the "residence" or "house" to make sense of our interpretation. It has the added benefit of a bright-line rule:

residential landowners have immunity if they shovel the part of the municipal sidewalk that borders their property. Courts would not be endlessly debating what kinds of shoveled paths are "akin" to a sidewalk, or whether the porch is as much of the sidewalk as the walkway or driveway.

¶ 80    We respectfully disagree with the decisions in *Yu*, *Kurczak*, and *Bremer*. We do not read the phrase "sidewalks abutting the property" of a residential landowner as including walkways on private property. We read the phrase as limited to the municipal right-of-way, the part of the public street reserved for pedestrian use, that abuts private residential property.

¶ 81    Thus, regardless of whether plaintiff's accident occurred in a "parking area," a walkway or pathway on private property, or a hybrid of both, it did not occur on a "sidewalk" within the meaning of the Snow and Ice Removal Act. We find the Act inapplicable to this case. We reverse the grant of summary judgment in favor of defendants and remand for further proceedings.

¶ 82    Reversed and remanded.